THE STATE OF KANSAS v. MARY ISABEL MARTIN.

INFORMATION for murder in the first degree, filed June 5, 1882, jointly charging that the defendants *Mary Isabel Martin* and E. D. Mosley, on the 23d day of May, 1882, in the county of Lyon, state of Kansas, did then and there kill and murder one Loraine M. Keiger, by administering to her strychnine. Trial of the defendant *Martin* at the September Term, 1882, of the district court of Lyon county, and verdict, guilty of the crime of murder in the first degree, as charged in the information. The court overruled defendant's motion for a new trial. Thereupon her attorneys asked the court to delay its judgment on the verdict, for the reason that defendant was insane. The court appointed five physicians to examine the defendant and report concerning her mental condition. The physicians appointed as aforesaid, on December 29, 1882, reported to the court that after a careful investigation as to the mental condition of defendant, they were convinced that her insanity was feigned, and that she was sane. Thereupon the court duly rendered judgment upon the verdict against defendant *Martin*. She appeals.

*Peyton, Sanders & Peyton*, for appellant.

*J. W. Feighan*, county attorney, and *J. Jay Buck*, for The State.

*Per Curiam:* A careful examination of the record convinces us that the judgment ought not to be set aside upon the ground that the verdict was not supported by sufficient evidence. It appears from the record that the deceased, Loraine M. Keiger, died May 23, 1882, from strychnine. The theory of the appellant is that Mrs. Keiger, being a comparative stranger in Emporia, in this state, where she died, without a home, money or relative, save a daughter, a young unmarried woman, then pregnant, but also without a home or money, and weary of life, voluntarily poisoned herself.

23—31 KAS.

On the part of the state, evidence was introduced upon the trial that the appellant obtained $5,000 policy of insurance on the life of Mrs. Keiger a short time before her death, in the Centennial Mutual Life Association; that the policy was payable to her son, E. D. Mosley (charged as accessory before the fact;) that shortly after the policy was issued, Mrs. Keiger went to live with the defendant, and remained there until her death; that the son Mosley had seduced her daughter; that to get Mrs. Keiger out of the way, and obtain the money on the policy issued on her life, the appellant first administered arsenic to her, but that not causing death, on account of her stomach throwing it off, she gave her the strychnine, from which she died.

There was sufficient testimony to overthrow the theory of suicide and establish the charge that the appellant was guilty of murdering the deceased by means of strychnine. Twelve jurymen heard the living voices of the witnesses, saw the parties who uttered them, and the trial judge approved their verdict; therefore, we have before us not only the verdict of the jury, but also the indorsement of that verdict by the trial judge, and this court cannot decide upon the record that the judge and jury ought to have believed and found that the deceased committed suicide by poisoning herself.

Even if the court erred, under the authority of *Kelsey v. Layne,* 28 Kas. 218, in permitting the witness Wasson, for the purpose of impeaching the defendant, to testify that she told him she was forty-three years of age, without sufficient foundation having been laid for the introduction of this evidence, it was not such an error, under the circumstances of the case, as would justify a reversal of the judgment.

The remarks of one of the attorneys representing the prosecution, in his closing argument, were not so intemperate or prejudicial as to demand, in our opinion, a new trial. (*Winter v. Sass,* 19 Kas. 566; *The State v. Comstock,* 20 id. 650.)