No. 24,109.

MARGARET HANKS, *Appellee*, v. YELLOW CAB & BAGGAGE COMPANY, *Appellant*, et al.

SYLLABUS BY THE COURT.

1. COLLISION — *Two Automobiles—Negligence—Injuries—Evidence Sufficient Against Demurrer.* In an action to recover for injuries plaintiff sustained while a passenger in a jitney which collided with a taxicab, the evidence is held sufficient as against a demurrer and a motion for a directed verdict.

2. SAME—*Evidence of Compromises and Settlements With Other Parties Inadmissible.* In an action to recover for injuries sustained in a collision by two automobiles, evidence of compromises and settlements with other parties injured in the same accident is not admissible' unless they contain admissions of fact.

3. SAME—*Practice—Strengthening Credibility of One's Own Witness on Direct Examination Improper.* In the orderly course of procedure a party is not entitled in direct examination to offer evidence to strengthen the credibility of his witness. While it might not be improper in the direct examination to ask a witness a general question inquiring whether or not he has any interest in the result of the suit, a party has no right, under the pretense of strengthening the credibility of his witness, to bring before the jury incompetent, irrelevant and probably prejudicial testimony.

4. SAME—*Proof of Settlement of Suits by Others Admitted—Error Not Cured by Cross-examination.* In support of her cause of action plaintiff offered testimony of two other passengers in the jitney who were injured in the same collision, and in direct examination brought before the jury the fact that they had sued the taxicab company and settled their causes of action. They testified they did not know that their actions were against the owners of both cars. The court permitted the testimony to stand on the theory that the taxicab owner on cross-examination showed that the witnesses had sued the owners of both cars. *Held,* that the error in admitting proof of the settlement over objections was not cured by what occurred in the cross-examination.

5. SAME—*Misconduct of Counsel in Argument to Jury.* After the court had stricken out evidence showing a settlement with one of the witnesses the ruling was reversed and the evidence permitted to stand on the statement of plaintiff's counsel that it was offered solely for the purpose of strengthening the credibility of his witness. In his argument to the jury he made the statement that "the defendants have settled with these witnesses who were injured in the same collision." This was not said in connection with any argument respecting the credibility of plaintiff's witnesses. *Held,* that the use of the evidence for the obvious purpose of giving the jury the impression that the settlements amounted to an admitted liability was misconduct within the provisions of section 305 of the civil code, which, under all the circumstances of the case, entitles the adverse party to another trial.

Hanks v. Cab & Baggage Co.

Appeal from Wyandotte district court; division No. 1; EDWARD L. FISCHER, judge. Opinion filed October 7, 1922. Reversed.

A. L. Berger, of Kansas City, William S. Hogsett, and Murat Boyle, both of Kansas City, Mo., for the appellant.

J. K. Cubbison, William G. Holt, both of Kansas City, and H. G. Pope, of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was to recover damages for injuries the appellee claims resulted from a collision between a jitney, in which she was riding, and a taxicab, while crossing a street intersection in Kansas City, Mo. She recovered a verdict of $10,000 against the Yellow Cab & Baggage Company, referred to herein as the appellant, and V. L. Roberson, doing business as the K. & M. Taxicab Company. The Yellow Cab & Baggage Company alone appeals.

The petition set up certain ordinances of Kansas City, Mo., requiring drivers of vehicles to drive on the right of the center of all streets, and limiting the speed to twenty miles per hour upon streets such as the ones in question (with a proviso limiting the rate to ten miles an hour when any person or vehicle is in the intersection and there is danger of a collision). Negligence was charged against both defendants for carelessly operating their cars. It was alleged that Roberson saw or should have seen the yellow cab in time to avoid the accident, and that the driver of the yellow cab violated the ordinance in driving across the intersection in excess of ten miles an hour when he saw or should have seen Roberson's car, in which appellee was a passenger. The petition alleged that the appellee was not driving or directing the movements of the jitney in which she was a passenger and had no control over its movements, and was exercising due care in her own behalf.

In its answer, the appellant pleaded the same ordinances, including a provision that whenever vehicles approaching each other on different streets shall reach an intersection at the same time, the vehicle which has another on the right hand shall have the right of way, but providing that every such vehicle shall be kept under control so as to prevent danger of collision. The answer further alleged that appellee's injuries, if any, were caused by the reckless acts and omissions of herself and Roberson who was driving the car in which she was a passenger; (1) in driving the car in a negligent manner without regard to the convenience of other vehicles and in violation

of the ordinance; (2) at a rate of speed in excess of fifteen miles per hour at a time when there were upon the intersection other vehicles, including that belonging to the Yellow Cab Company; (3) in attempting to cross the intersection when the yellow cab was on the intersection and had the right of way. The answer also set up the defense of contributory negligence on the part of the appellee.

Baltimore avenue in Kansas City, Mo., runs north and south and is intersected by Southwest boulevard, which runs on a curve at the intersection from a northeasterly to a southwesterly direction. In the center of the boulevard are located street-car tracks. The accident happened early in the morning. The testimony of the driver of the yellow cab was to the effect that he was on his way to the union station, driving south on the west side of Baltimore avenue; and when about 45 feet north of the curb line of the boulevard he looked east and west and saw Roberson's car about 150 feet west of the intersection; he then slowed down to ten miles an hour, but noticed that Roberson was not looking, and he speeded up to try to get out of Roberson's way. Roberson was on Southwest boulevard, going towards Kansas City, and was driving his car, in which there were seven passengers, including the appellee. As he entered the intersection he leaned forward to look south on Baltimore on account of a blind corner there. He did not look north up Baltimore avenue as he entered the intersection, his attention being fixed on vehicles that might be approaching from the south. After looking south he looked east and first saw the yellow cab on the boulevard just crossing the car tracks. He was then distant a few feet, probably five or six, and he tried to turn to the south to avoid the collision. The radiator of his car struck the right rear fender of the yellow cab, throwing it across the boulevard, where it tipped over after sliding a distance of fifteen feet or more. Roberson testified that all he saw was just the flash of the car, then the crash, and that the front end of his jitney struck the right side of the taxicab.

Roberson testified on direct examination that when he came to the intersection he threw out his clutch and slowed down, and then looked straight ahead and saw nothing on the intersection. "When I looked straight ahead, I was about twenty-five or thirty feet west of the intersection, then I kicked out my clutch and run slow. There is a building on the right-hand side, southwest corner, and just before I got to the intersection I leaned forward to look south on Baltimore, and still south until I could see due south on Baltimore. And

then when I raised up and turned the other way, there was the yellow cab six or eight feet from me at the center of the intersection of Baltimore." He said that he was traveling about ten miles an hour; that the radiator of his car struck the rear fender of the yellow cab; his own car was swung around to the right and turned over on its left side. After the collision the yellow cab turned over and slid up against the east curbing on its left side. Nobody was thrown out of the car upon the ground. The bystanders came up and tore off the top and the passengers were pulled out and crawled out. "Mrs. Hanks was lying immediately on top of me."

On cross-examination he admitted that he made a written statement, which he testified was practically true—"a pretty good story of the accident." In this statement he said that, "as my car entered this intersection, it was going twelve to fifteen miles an hour." Asked if that was correct, he said, "I never had any speedometer. Q. Well, that is your estimate, the statement you made? A. Yes." In the written statement he said that he had to lean forward on account of the girls being to his right, and that by the time he straightened up the other car was almost to the center of the intersection and his own car was five or six feet from it at that time. He then put on his brakes and started to turn to the south to avoid hitting the other car. He testified that these statements were correct, and also the statement that the yellow cab, after his car struck it, went about fifteen feet and turned over on its left side. He denied that he had made the statements in the writing to the effect that there was nothing unusual about the speed of the yellow cab so far as he could see, and that it was not going unusually fast when he saw it, and denied that he stated therein that the yellow cab might have been going slower than he was for all he knew.

He testified that the following part of the written statement was correct:

"I do not know why I did not look north up Baltimore as I approached and entered the intersection unless it is because I am always afraid of blind corners, and consequently my attention was fixed on vehicles approaching from the south, as I remember there was one, and I just failed to look north."

Roberson, being a common carrier, was, of course, chargeable with the highest degree of care, skill and foresight consistent with the practical operation of his conveyance to prevent injury to appellee while she was a passenger therein, and the court so instructed the jury and told them that if they found from the evidence that he

failed in the performance of this duty, it was negligence. The court charged that appellant was required to exercise ordinary care and prudence in operation of its taxicab, and that its failure in this respect would constitute negligence; also that the appellee was required to exercise ordinary care and prudence to prevent an injury to herself, and a failure in the performance of this would constitute negligence on her part.

Complaint is made of the failure to sustain demurrers to appellee's testimony, and also at the conclusion of the testimony offered by the defendant, Roberson; also of the refusal to direct a verdict in favor of appellant. It is argued that while the testimony proved a cause of action in favor of the appellee against Roberson as a common carrier of passengers for hire, still the charge of negligence against the appellant, based on violations of the city ordinances, was not sustained.

Perhaps the preponderance of the evidence and the physical facts, about which there could be little dispute, were in favor of the appellant in respect to these matters. Nevertheless, Mrs. Hanks testified that she was familiar with street cars and automobiles, knew generally their speed, and could estimate how fast these cars were going at the time of the collision. She says that she saw the yellow cab when it was about twenty feet distant from the point of collision and that she judged it was going three times faster than the jitney, or at the rate of about twenty-seven or thirty miles an hour. If it be conceded that this is opposed to the weight of the other testimony, still it raised a question of fact that had to be submitted to the jury. No special findings were asked; and the general verdict cannot be said to be without evidence to support it, if the jury saw fit to believe the evidence. For the same reason it was not error to overrule the motion for a directed verdict. A situation was presented which might have appealed strongly to the judgment and discretion of the trial court on the hearing of the motion for a new trial, but that motion was overruled and the case comes here with the verdict and judgment approved by the district court.

It is said in the appellant's brief that the appellee "made a feeble attempt, or rather a suggestion, that she was watching Roberson at the time he entered the intersection of Baltimore avenue and Southwest boulevard and that from her observation, based no doubt on her eagerness to win her lawsuit, claimed that Roberson as he en-

tered the intersection looked both ways for the oncoming of some other car."

The jury are presumed to have considered her interest in the event of the suit when they weighed the truthfulness of her story; the same presumption must be indulged respecting the court, in overruling the motion for a new trial. It cannot be held as a matter of law that the appellee was guilty of negligence because of the failure, in the short space of time in which she had to act, to caution or warn the driver of the car in which she was a passenger.

Another contention of error presents a more serious question. Edna Everett, the second witness called for appellee, was one of the passengers in the jitney who was injured. Appellee's counsel asked her this question: "Have you any suit against this company or any other company?" Before her answer was completed, counsel for appellant interrupted and asked her to wait a minute, but she answered, "I have gotten a settlement." A motion to strike out the answer as incompetent, irrelevant and immaterial was overruled. The witness was then asked, "Have you had a suit against this company, the Yellow Taxicab Company?" She answered, "I have had a settlement with the company." Upon motion the court first ordered this answer stricken. Mr. Cubbison, attorney for the appellee, said, "I haven't asked her about a settlement; but about a suit. I have asked her if she had a suit or claim; that is preliminary." The court instructed him to "go ahead." "Q. Did you have a suit or claim against the Yellow Taxicab? A. Yes. Q. Was it against them or both companies? A. Against the Yellow Cab."

The appellant's attorney considered this evidence as harmful and likely to leave an impression on the jury that a settlement with one of the injured parties was an admission of liability, and thereupon he proceeded to cross-examine the witness as to whether she had not sued both Roberson and the appellant. She testified that she did not know that. He then introduced the petition in her action showing that she had sued both Roberson and the appellant. On redirect examination appellee's attorney asked, "That suit that was commenced there by you, has it been settled?" The court sustained an objection. Appellee's counsel then asked the court to hear him for a minute, and said:

"The question about another controversy and whether it is settled or not, might not be an issue; but they have introduced a petition here in which they claim this woman had a suit against their company. They have put it in here

for the purpose of affecting the weight of her testimony. Whether or not that case is settled, since they have put the petition in the record, goes to the weight of her testimony. If the case has been settled, it might have one weight; if the case has not been settled, it would be an inducement for her to testify. They have put it in themselves. They have made it an issue, going to the credibility of the witness."

Appellee's attorney insisted that his question was proper, but only for the purpose of affecting the credibility of the witness, and stated this was the only theory upon which he desired the question answered. The court reversed the ruling and held that the evidence might go in for the purpose stated; and over appellant's objections, Edna Everett and another woman, who was a passenger and injured in the same collision, testified that all controversies involved in their separate actions had been settled. A motion to strike out all of this evidence as incompetent, immaterial and prejudicial, and induced by misconduct of counsel, was overruled, as well as a request for the court to instruct the jury to disregard the same as prejudicial.

In this connection error is predicated upon the conduct of appellee's attorney in his closing argument, when he stated to the jury in substance, "These defendants have settled the claims of Miss Everett and Miss Rowe, who were injured in this same accident." The remarks were objected to, and after the close of the argument by the attorney for the appellee the court instructed the jury as follows:

"In regard to the exception that was taken by Mr. Berger to the statement of Mr. Cubbison during his argument in regard to the settlement of claims of the witnesses to whom he referred, I want to instruct you that that testimony was not introduced for the purpose and should not be considered by you for the purpose of determining whether there was any liability in those cases or in this case. It was simply admitted for the purpose of—or in so far as it might tend to throw light on the credibility of the witnesses, as tending to show whether they had any interest in this controversy or not.

"Mr. BERGER: I want a further exception, Your Honor. He said in his statements that the defendants had made a settlement with these people. I except to the remark whereby he used the plural and included the defendant Yellow Cab Company, which was not in the evidence and not correct and not true.

"THE COURT: Well, this instruction I have just given you gentlemen refers to both defendants. Any settlement of that sort should not be considered here as determining whether there was any liability or not, as to either defendant."

No attack had been made on the credibility of appellee's witnesses when her counsel first brought into the case, over appellant's objections, the fact that settlements had been made between them

Hanks v. Cab & Baggage Co.

and the appellant for injuries in the same accident. Will the fact that after the evidence had been admitted, over objections, the appellant felt compelled to show by cross-examination that the witnesses had sued Roberson as well as the appellant, cure the error or estop the appellant from claiming that it was prejudicial? We think not. Generally, the purpose for which testimony has been introduced may best be determined by the specific use made of it in argument. It appears that appellee's counsel in his closing argument to the jury stated that these parties (which includes the appellant) "have settled with these witnesses who were injured in the same collision." It is not claimed that this statement was made in connection with any argument respecting the credibility of any witness.

Ordinarily, it would seem that before the credibility of a witness is attacked, the party producing the witness should not be entitled to offer affirmative evidence to strengthen the credibility of his witness. And yet it could hardly be held improper or ground of error to permit the party to ask of the witness a general question, such as: "Have you any interest in the result of this lawsuit?" But under the pretense of strengthening the credibility of his witness he ought not to be permitted to drag into the record testimony which would otherwise be wholly incompetent, irrelevant and probably prejudicial; certainly not in the absence of an attack upon the credibility of his witness. In *Georgia Ry. & El. Co. v. Wallace*, 122 Ga. 547, it was said:

"It costs time, trouble, and money to defend even an unfounded claim. Parties have a right to purchase their peace. The fact that they have entered into negotiations to secure that end, and admissions or propositions made with the view to a compromise, are not admissible in evidence for or against either litigant, in the event there is a failure to adjust and a suit follows. For a much stronger reason, evidence of a settlement with a third person injured in the same casualty ought to be excluded." (p. 550.)

In that case the party against whom the evidence was offered made an attempt to remove from the minds of the jury the impression that a certain payment was a settlement of an admitted liability. It was held that the error in admitting the evidence was not cured by an instruction that the evidence could only be considered for the purposes of impeachment.

In *Ferry's Admr. v. Louisville Ry. Co.*, 165 Ky. 747, it was held in a similar situation that, as affecting the credibility of his witness, plaintiff may not ask him if witness' claim against defendant was

settled, he having no right to impeach him, nor in the absence of an attack on his credibility to give proof tending to strengthen it.

The contention, therefore, that the evidence was admissible in the present case to strengthen the credibility of these witnesses falls to the ground, when it is remembered that evidence of the compromise was admitted over objections, and before any attempt had been made to impeach appellee's witnesses, if it can be said that any attempt was made.

In *Railroad Co. v. Stone*, 78 Kan. 505, 97 Pac. 471, the opinion, by Mr. Justice Benson, recognizes the authority of the rule that offers of compromises are not admissible unless they concern admissions of fact.

In *St. L. S. F. & T. Ry. Co. v. Knowles*, 44 Tex. Civ. App. 172, suit was brought against a traction company and a railroad company for injuries to a passenger of the former in a collision. Evidence that the traction company had made settlements with several passengers who sustained injuries in the collision was held incompetent as an admission of liability on its part. The reason for the rule is stated in *Georgia Ry. & El. Co. v. Wallace*, supra, as follows:

"The rule against allowing evidence of compromises is founded upon recognition of the fact that such testimony is inherently harmful, for the jury will draw conclusions therefrom in spite . . . of anything which may be said by the judge in instructing them as to the weight to be given such evidence." (p. 551.)

Moreover, after the court had stricken out the evidence showing this settlement counsel induced the court to reverse the ruling and admit the evidence for the sole purpose of strengthening the credibility of his witness, but later in the closing argument made use of the fact for the purpose for which such evidence is usually offered, and ignored the ruling of the court restricting the purposes for which the settlement could be considered by the jury. This might amount to misconduct within the provisions of section 305 of the civil code, and furnish grounds for a new trial, without necessarily implying any evil or corrupt motive on the part of counsel. In *Winter v. Sass*, 19 Kan. 556, 566, Mr. Justice Brewer said:

"We doubt not that many cases may arise in which the misconduct of counsel, in going outside of the evidence in his argument, may be such as to compel a reversal. No one can doubt the impropriety of such conduct. In doubtful cases it may be that which turns the scale, and determines the verdict."

As said in another opinion, by Mr. Justice Valentine:

"It may also be that the seeming misconduct of the plaintiffs did not affect the verdict of the jury; but it may be that it did, and we cannot say that we feel clear that it did not, and this is all that is necessary to require a reversal of the judgment." (*May, Weil & Co. v. Ham,* 10 Kan. 598, 601.)

Facts in evidence about which there can be little dispute, the admissions of Roberson and many of the circumstances, leave the impression that the real cause of the collision was his negligence. Upon the question as to the negligence of appellant the case is at least a doubtful one. Moreover, in view of the evidence of the two physicians appointed by the court to examine the appellee with respect to the extent of her injuries; the history of her condition as detailed to them by her; the fact that not long previous to the accident she had undergone an operation for appendicitis; all these facts and circumstances raise a serious question whether the amount of the verdict and judgment is not excessive. The record as a whole shows a doubtful case, in which it may well be that the admission of this evidence (and especially the use made of it in direct conflict with the court's ruling at the time it was admitted) turned the scale and determined the verdict. It is our opinion that in the furtherance of justice a new trial should be ordered.

The judgment is reversed and the cause remanded with directions to grant a new trial to the appellant, the Yellow Cab and Baggage Company.