No. 25,252.

O. O. WEAVER, *Appellee,* v. J. A. WINCHELL, *Appellant.*

SYLLABUS BY THE COURT.

ALIENATION OF WIFE'S AFFECTIONS—*Prejudicial Remarks of Plaintiff's Counsel in Closing Argument—New Trial.* In an action for damages for alienation of a wife's affections, where a copy of a letter written by the wife to the defendant was, on objection, excluded from the evidence, it was error for plaintiff's attorney in the closing argument to the jury to hold a paper in his hand and tell the jury that it contained the most important evidence in the case, and that they would remember how when it was offered in evidence the defendant objected and continued to object and the court sustained the objection, and hence the jury was not permitted to see or hear what was in the paper, etc.

Appeal from Douglas district court. HUGH MEANS, judge. Opinion filed June 7, 1924. Reversed.

C. A. Smart, of Lawrence, for the appellant.

F. B. Dodds, and J. B. Wilson, both of Lawrence, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for damages for alienation of the affections of the plaintiff's wife. The plaintiff recovered, and defendant appeals.

The plaintiff and Minnie A. Weaver were married in 1904. To this union six children were born. Plaintiff at the time of the marriage was a farmer. He has followed that occupation a portion only of the time since. The family moved about to a considerable extent and accumulated little. They lived in Lawrence, Kan., and were on very friendly terms with the defendant and his wife. The defendant operated a dairy. The plaintiff and his wife worked for defendant on two or three occasions. At one time the plaintiff and his family occupied the house of the defendant while the latter and his family went on a vacation. In 1921 the plaintiff and his family lived in a cottage south of the state university. He was employed as a fireman at the university, worked usually from about twelve o'clock noon to eight or nine o'clock in the evening; sometimes worked at night. His wife became noticeably friendly with the defendant. This aroused suspicions on the part of the plaintiff and apparently resulted in trouble in both families.

The evidence showed that the plaintiff's wife was frequently seen with the defendant at his dairy barn, on the street, and riding with him in his milk truck. The defendant presented plaintiff's wife with a ring. A cow was also procured from the defendant, it being the contention of the plaintiff that the defendant gave the cow to his wife. This was disputed. Mrs. Weaver on one occasion sent a letter to the defendant by one of the children. It was found by defendant's wife. The defendant and his wife had difficulties and the letter was turned over by Mrs. Winchell to her lawyer. A copy was made, presumably to be used as an exhibit. Later the difficulty between defendant and his wife was settled and Winchell called upon the lawyer and procured from him the letter, also the ring which Mrs. Weaver had returned to the defendant and which was also in the hands of Mrs. Winchell's lawyer.

Trial was to a jury. In addition to a verdict of $2,000 in favor of the plaintiff, the jury was asked and answered two special questions, as follows:

"1. If you find for the plaintiff and against the defendant, then state what act, if any, you find Mr. Winchell did intentionally and maliciously to cause the plaintiff's wife to leave him. Ans. (a) By presenting Mrs. O. O. Weaver a gold ring. (b) The kissing episode on South Tennessee street.

"2. If you say he did any such act, when and where was it done? Ans. (a) In the fall of 1921 in thirteen hundred block on Kentucky street. (b) On South Tennessee street in the summer of 1921."

Several assignments of error are alleged: that the court erred in overruling a motion to make the petition more definite and certain, in admitting and in refusing to admit testimony, and misconduct of counsel. The principal argument is based on misconduct of attorneys for the plaintiff in the trial of the case. The testimony showed that, after the defendant procured the ring and letter from Mrs. Winchell's attorney, Winchell destroyed the letter. On the trial plaintiff sought to introduce the copy in evidence. Defendant made strenuous objection, which was sustained by the court, resulting in the exclusion of the letter. The plaintiff then sought the consent of Mrs. Winchell to the introduction of the letter in evidence. She was told by the court that it was entirely within her decision as to whether or not she would give her consent. She said, "I don't believe I will." One of the attorneys for the plaintiff, in the course of his argument to the jury, said, in substance, while holding a paper in his hand, which he told the jury contained the most important evidence in the case; that they, the jury, would remember how when he offered this paper in evidence the defendant objected and continued to object, and the court sustained the objection, and hence the jury was not permitted to see or hear what was in the paper; that the object of the law was not to exclude important evidence on technical grounds, but to let the jury have the whole truth, etc. No objection was made at the time to the remarks of the attorney, nor was any request made at the time or at the close of the argument that the jury be directed to disregard the remarks. It appears to have been the practice for many years in the district court of Douglas county, by unwritten rule, that no lawyer shall interrupt opposing counsel while he is making an argument; that if a lawyer, while making an argument, makes an unjust, unfair or unreasonable argument, opposing counsel shall call the court's attention to it upon a motion for a new trial and the aggrieved party shall be given the benefit thereof.

In *Winter v. Sass*, 19 Kan. 556, it was said:

"A counsel in his argument to the jury should confine himself in his statements of fact to the matters in evidence. If he travel outside the case, and assert to be facts matters not in evidence, he is guilty of misconduct for which he may be punished personally." (Syl. ¶ 4. See, also, *State v. Comstock*, 20 Kan. 650, 655.)

"Sometimes, also, the interests of justice require that the verdict returned in his client's favor shall be set aside on account thereof. But there is no absolute rule to this effect. All that can be safely laid down is that whenever in the exercise of a sound discretion it appears to the court that the jury may have been influenced as to the verdict by such intrinsic (extrinsic) matters, however thoughtlessly and innocently uttered, or that the statements were made by counsel in a conscious and defiant disregard of his duty, then the verdict should be set aside." (Syl. ¶ 5. See, also, *Perkins v. Ermel*, 2 Kan. 325; *State v. Yordi*, 30 Kan. 221-225; *State v. Martin*, 31 Kan. 353 [Syl.]; *Hanks v. Cab & Baggage Co.*, 112 Kan. 92, 209 Pac. 977.)

The remarks of counsel for plaintiff in the instant case could, and undoubtedly did, enter largely into the result of the jury's verdict and thereby prejudiced the rights of the defendant. Under the circumstances there should be a new trial.

It is not necessary to discuss other questions raised in the briefs.

The judgment is reversed and the cause remanded for a new trial.