### BLISS et v HARTNETT

Ohio Appeals, 6th Dist, Erie Co

No 414.    Decided Oct 6, 1933

King, Flynn & Frohman, Sandusky, for plaintiffs in error.

John F. McCrystal, Sandusky, for defendant in error.

## OPINION

By LLOYD, J.

In this case again arises the present much-discussed and argued question as to how far a plaintiff may go in asking questions, either on voir dire or during the progress of the trial, as to the interest of any insurance company. Prospective jurors were not only individually asked the general question of interest or connection with any insurance company but also the specific question of any connection with or interest in the Agricultural Insurance Company of Watertown, New York, and those questions could not but have left with the average mentally endowed juror the emphasized impression that the Bliss automobile was protected by this particular insurance company. In the opinion in **Thackery v Helfrich, 123 Oh St, 334**, it is stated at page 336 that the Supreme Court.

"announces the law only through the syllabi of cases and through per curiam opinions. Individual opinions speak the conclusions of their writer. What useful purpose they serve is an open question."

The third syllabus in **Pavilonis v Valentine, 120 Oh St, 154**, reads as follows:

"It is not error to permit the examination of a prospective juror on his voir dire as to his connection with, interest in or relationship to a casualty insurance company, where such company is directly or indirectly interested in the result of the trial."

Taking this to mean literally what it says, since there is nothing in the record of the

instant case, other than implications from the questions asked, that any insurance company was "directly or indirectly interested in the result of the trial", it seems to me that examining prospective jurors on this subject was improper, but since the verdict in the instant case is so excessive as to evidence passion and prejudice in its rendition, we shall forego discussing the question further.

The answer of Bliss, filed to the second amended petition of Hartnett, alleges that "the automobile driven by him was the property of the defendant, Henrietta I. Bliss." Whether it was ,or not was of no importance, because at no time was it claimed that Bliss, who was the sole occupant thereof, at the time in question, was using it for any purpose or upon any mission of Mrs. Bliss. The second amended petition did not so allege and nobody claimed any such fact. Bliss was called for cross-examination by Hartnett and was asked a number of questions as to the ownership of the automobile. The following appears in the bill of exceptions:

"Q. Have you had it insured?
Mr. Flynn: I object.
Court: Objection sustained.
Mr. McCrystal: Note an exception. We expect to show if the witness were permitted to answer, that it was insured.
Q. Now the further question, if it was insured, who paid for the insurance?
Mr. Flynn: I object.
Court: Objection sustained.
Mr. McCrystal: Note an exception. We expect to show, if the witness were permitted to answer, that Dr. Bliss paid for the insurance."

These questions, of course, were asked in the presence of the jury and could serve no useful purpose other than to tend at least to induce the belief that a verdict against Bliss would be paid by some insurance company, probably that on which so much stress was laid in the voir dire examination of the jury. And the offers to prove, made presumably in the presence of the jury, the bill of exceptions not indicating otherwise, could serve only to emphasize such assumption and belief. In examining a witness called by Bliss as to whom he had given a written statement before the trial as to the facts relating to the collision, counsel for Hartnett asked these questions:

"Q. Or some member of an insurance company?
A. Her?
Q. Yes? A. No, sir.
Q. He was a stranger to you as far as you know, a stranger that came into town? A. As far as I know.
Q. You didn't know him at all but you signed a statement for him? A. Yes, sir."

We are satisfied that these repeated references and intimations as to insurance companies left their imprint on the minds of the jurors, for by no stretch of a normal imagination could a verdict of $7,000.00 be warranted by the evidence adduced.

Hartnett was 47 years of age at the time of the collision and was in the business of taking orders for mens' clothing for "Richmond Brothers of Cleveland." He returned to work the latter part of October, 1930. He testified that he made $20.00, $30.00 or $60.00 a week, "according to how you take the orders. Some weeks would be good and some bad." An automobile salesman fixed the damage to Hartnett's automobile at $235.00. The physician valued his services at from $50.00 to $60.00. After the collision Hartnett drove his car to his home and two days later called a doctor who, he said, "bandaged it up and told me to rub it and he put some stuff on it himself." The next day "he fetched some splints and put them on." The injury, the physicians testified, consisted of a fracture of the tibia or small bone of the left leg. An X-ray was taken and the doctor testified that it showed the fractured bone to be in good position. Hartnett testified that he was in bed for about six days, after which he said, "I sat around the house in a big chair until I got some crutches" and then "I hobbled around on crutches for, I think, six weeks" and after that used a cane for about five weeks. Thereafter he used neither cane nor crutches, but testified that after walking, his ankle and instep became painful and his leg tired. No one testified as to the injury being serious or of long duration, the only testimony on that subject being that of his attending physician who said "there might be some soreness and some weakness for a while in those muscles." It is therefore apparent that the character and nature of the injury to Hartnett, in conjunction with the damage to his automobile, expense for services of his physician, his claimed loss of earnings while he was recovering, would not warrant a verdict of $7,000.00 in his favor.

In our judgment the verdict, as we have indicated, is excessive, appearing as it does

to have been given under the influence of passion and prejudice, and the only possible reason therefor that we can discover in the record of the trial is that the jury concluded that an indemnity company was bound to pay the amount thereof. So that sometimes it happens that whatever the purpose or motive, the injection by innuendo into a trial of facts assumed as probably or possibly existing but not in issue or in evidence, reacts like a boomerang to nullify the verdict.

In charging the jury as to the legal effect of the right of way statutes, the trial judge followed the rule announced by the Supreme Court in **Heidle v Baldwin, 118 Oh St, 575.** Since the trial of the instant case in the Court of Common Pleas, the Heidle-Baldwin decision has been disapproved and overruled by the Supreme Court and in consequence thereof the charge on this subject, under this later decision, is erroneous and constitutes prejudicial error.

The judgment of the Court of Common Pleas is reversed and the cause remanded to that court for a new trial.

Reversed and remanded.

RICHARDS and WILLIAMS, JJ, concur.