No. 31,988

Virginia Pool, by Her Father and Next Friend, John Pool, *Appellee*, v. Mont Day, as Administrator of the Estate of James Brady, Deceased, *Appellant*.

(40 P. 2d 396)

Opinion filed January 26, 1935.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris,* all of Wichita, and *Harry O. Janicke,* of Winfield, for the appellant.

*W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *Wm. E. Cunningham,* all of Arkansas City, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This is an action in the name of a minor about seventeen years of age by her father, as her next friend, against the administrator of James Brady, deceased, to recover damages for injuries received by the plaintiff when riding in the car of the deceased, James Brady, driven by him at a high rate of speed, when the car ran against a high embankment at the side of the highway at a railway underpass near Blackwell, Okla., on May 23, 1933. Two other young people were with them in the car when the accident occurred. The driver was instantly killed, the plaintiff was seriously

injured, the other girl lived only a few hours after the accident, and the other young man was rendered unconscious for a while.

This action was commenced in the district court of Cowley county, Kansas, which had been the home of both plaintiff and James Brady, and still is the home of the plaintiff, and is the county in which the administration of the estate of James Brady is pending.

The petition alleged there was no law, regulation or statute such as the Kansas guest statute in force and effect in the state of Oklahoma at the time of this accident and injury, but that the common law governs and determines the liability of a driver of an automobile to his guest in Oklahoma, except as modified by a certain statute as to speed and careful driving, which is criminal in effect, providing for a fine and jail sentence.

The answer admitted the collision between the automobile and the embankment of the underpass and that the deceased was driving at the time and place of the accident, but alleged that the deceased and the other three young people, including the plaintiff, were engaged in a joint enterprise, going to a dance at Ponca City, Okla., and the deceased was the agent of the plaintiff and others, and plaintiff assumed and was bound by any alleged negligence of the deceased.

The jury returned a verdict for plaintiff against the estate of the deceased for $12,500, and answered a number of special questions. Judgment was rendered for plaintiff, from which the defendant appeals, raising many questions and assignments of error.

The first assignment of error argued by appellant is the failure of the trial court to sustain the demurrer of defendant to the evidence of the plaintiff and to give an instruction concerning the requirement of gross and wanton negligence under the Kansas guest statute, R. S. 1933 Supp. 8-122b, which is as follows:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payments for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

The first question for consideration is whether the Kansas guest statute applies to this accident which occurred in Oklahoma, when recovery for the injuries received is being sought through the courts of Kansas. Our guest statute was enacted in 1931, and the reasons for its enactment and enforcement are thoroughly discussed and con-

sidered in the case of *Stout v. Gallemore,* 138 Kan. 385, 26 P. 2d 573.

Appellant cites the case of *Young v. Nave,* 135 Kan. 23, 10 P. 2d 23, where in an action on a promissory note and mortgage, made and payable in Indiana, and providing for the payment of an attorney fee, which was valid in Indiana, it was held—

". . . the judgment was forbidden by a statute of this state, R. S. 67-312, which the district court was not at liberty to disregard for the sake of comity." (Syl. ¶ 1.)

It is worthy of notice and comparison as to the prohibitive language in this statute as compared with that in the guest statute. In the attorney-fee statute it is stated that "hereafter no court in this state shall render any judgment, order or decree by which any attorney's fees shall be allowed or charged to the maker of any promissory note, bill of exchange, bond, mortgage or other evidence of indebtedness by way of fees, expenses, costs or otherwise," whereas in the guest statute the negative provision is "that no person shall have a cause of action," etc. The plaintiff's cause of action here is an Oklahoma matter, and the courts are not prohibited in the guest matter from rendering a judgment on a cause of action arising in another state.

It was held in the early days of the enforcement of the liquor laws in Kansas in the case of *Distilling Co. v. Nutt,* 34 Kan. 724, 10 Pac. 163, that—

"Mere knowledge by the vendor of goods lawfully sold in one state that the vendee intends to use them in violation of law in another state, will not defeat an action brought in such other state by the vendor against the vendee for the purchase-price of the goods. In order that the action in such a case may be defeated, it must be further shown that the vendor sold the goods for the purpose that the law should be violated, or that he had some interest in its violation, or that he participated in some manner in the unlawful purpose." (Syl.)

This case is cited in 49 A. L. R. 1005, among decisions from many states under the heading of Enforcing Foreign Contract, valid where made, for sale of intoxicating liquor.

In the case of *Otey v. Railroad Co.,* 108 Kan. 755, 197 Pac. 203, it was held:

"In a cause of action arising in another state, the sufficiency of the evidence to sustain such an action when brought in this state is governed by the Kansas law of evidence." (Syl. ¶ 2.)

The case of *Koster v. Matson*, 139 Kan. 124, 30 P. 2d 107, was an action, prosecuted in this state, to recover damages for personal injuries sustained in an automobile accident in Nebraska under a guest statute of that state, and it was stated in the opinion that "Since the accident occurred in Nebraska, the liability of defendant is to be determined by the law of that state." (p. 126.) The fact that Kansas also had a similar guest statute was not involved in the case.

It was said in *Roseberry v. Scott*, 120 Kan. 576, 244 Pac. 1063, that causes of action arising in another state will be enforced in this state unless to do so would be contrary to the laws or public policy of Kansas. (p. 579.)

If the liability is fixed by the law of the place of the injury—in the case at bar, Oklahoma—there is nothing against public policy in the courts of Kansas enforcing such liability, as the petition alleges that the state of Oklahoma has the same common law as to liability of a driver of an automobile that we have, but we in addition to such, or in modification thereof, have the guest statute, which Oklahoma does not have. The case of *Hamilton v. H. & St. J. Rld. Co.*, 39 Kan. 56, 18 Pac. 57, was where a railroad employee was killed in Missouri, and the widow brought the action in the courts of Kansas, where it was said in the opinion:

". . . where a right of action becomes fixed and a legal liability incurred under the statute law of a state, such action is transitory, and the liability may be enforced in the courts of any state which has jurisdiction of such matters, and can obtain jurisdiction of the parties." (p. 60.)

The case of *Loranger v. Nadeau*, 215 Cal. 362, was almost exactly similar to the one at bar. The personal injury was by automobile accident occurring in Oklahoma, and the action for recovery of damages for such injury was brought in California, which state was the residence of plaintiff and defendant and had at the time a guest statute, and it was said in the opinion:

"The state of Oklahoma follows the common-law rule and permits a recovery on the part of a guest based on the ordinary negligence of the operator of the car. Prior to the enactment of section 141¾ of the California vehicle act in 1929 the law of this state was the same. Did the requirement of proof of gross negligence foreclose here the enforcement of the right which arose in Oklahoma? We are persuaded that it did not. The liability of a host to his guest for negligent injuries existed in both states. The trial court assumed jurisdiction of the subject matter of the action and acquired jurisdiction of the parties, both residents of this state. It cannot be said that in doing so the court violated any fundamental principle of justice or public

policy of this state and no question of good morals would seem to be involved." (p. 366.)

It was held in *Dennick v. Railroad Co.*, 103 U. S. 11, that—

"A right arising under or a liability imposed by either the common law or the statute of a state may, where the action is transitory, be asserted and enforced in any circuit court of the United States having jurisdiction of the subject matter and the parties." (Syl. ¶ 1.)

The case of *Masci v. Young*, 109 N. J. L. 453, was where an action was brought in New Jersey to recover from the owner of a car, living in New Jersey, which car was loaned to another party who drove it to New York City and there injured the plaintiff, and the New York statute imposed a liability upon the owner of the car, and the owner did not know that the borrower was going across the line into New York, and it was there held:

"In a suit wherein the cause of action arose in another state, the courts of this state will apply the law of the foreign state applicable thereto when it is not penal in nature, when it is not contrary to the policy of the law of this state, and when the local judicial procedure is adequate to enforce it." (Syl.)

In the case of *Reilly v. Pepe Co.*, 108 Conn. 436, it was held:

"That although the New York statute was in some respects dissimilar to our own—the amount recoverable being larger, the cause of action arising in favor of certain beneficiaries rather than of the decedent's estate, and the burden of proving contributory negligence resting upon the defendant—it was, nevertheless, enforceable in the courts of this state, since it was not penal in nature, nor did it violate our positive laws, contravene our public policy, offend our morals or threaten injury to public rights or the interests of our citizens." (Syl. ¶ 4.)

In a very recent case, *Brown, Admr., v. Perry, Jr., et al.*, 104 Vt. 66, it was held:

"General rule is that when action is transitory, and right has become fixed and liability has been incurred in state where transaction occurred, such right of action may be pursued and such liability enforced in any court having jurisdiction of subject matter and parties, provided statute under which cause of action arose is not inconsistent with public policy of state where cause of action is sought to be enforced." (Syl. ¶ 9. See, also, *De Shetler v. Kordt*, 43 Ohio App. 236; *Ryan v. Scanlon*, 117 Conn. 428; *Wise v. Hollowell*, 205 N. C. 286; *Levy v. Steiger*, 233 Mass. 600; and 84 A. L. R. 1268.)

It cannot be successfully contended that the common-law liability of the state of Oklahoma, which we also have at this time, is inconsistent with our law. Neither is the enforcement of it against the public policy of this state nor contrary to the provisions of the guest

statute. We do not think the guest statute in any way prohibits or restricts the enforcement of the common-law liability where the injury occurs in another state, like the Young case, which was with reference to attorney fees. So we conclude that the district court of this state had jurisdiction of the subject matter as well as of the parties to this action and that the action was not in violation of any positive law of our state and did not contravene our public policy, nor offend our morals or threaten injury to any public rights or the interests of our citizens in any way, and was therefore a proper case to be brought in the district courts of this state to enforce the liability created by the laws of Oklahoma.

We will next consider two other assignments of error together, the injection of the insurance question, and the excessiveness of the verdict.

The plaintiff herself, an intelligent girl seventeen years of age, and a graduate of high school, practically volunteered twice to inject the matter of insurance in the case. In neither case was it a necessary answer to the question asked of her by one of her own attorneys. In the first instance no objection was made to the question nor motion made to strike it out and admonish the jury. In the second instance such a motion was made and plaintiff's counsel promptly consented thereto, but nothing further was done in the way of withdrawing it from the jury or admonishing the jury to disregard it. It is argued that defendant, having failed to object and move to strike out the first answer, has waived the right to assign the matter as error now and in the motion for a new trial. Such is the general rule, and no explanation or reason is given by appellant for such failure. There are and always have been exceptions to this general rule, and whether or not objections and motions to strike out have been promptly made, it has been held to be the duty of the trial court to carefully exclude all highly prejudicial matter from the jury, and admonish the jury to wholly disregard the same in the hope thereby of avoiding a mistrial or the necessity of a new trial on account of the possible prejudice and passion created thereby in the minds of the jurors.

The following rulings go more particularly to the misconduct of the attorney, mostly in argument, sometimes in asking questions, but they will apply as well to volunteered incompetent evidence and will emphasize the duty of the court in seeing to it that prejudicial matter does not reach the jury.

In the case of *State v. Shelton,* 6 Kan. App. 662, 49 Pac. 702, it was said:

"This language was calculated to create prejudice against the prisoner. There is nothing in the record to justify its use. It was personal abuse. The court of its own motion should have interfered, reprimanded the county attorney, and instructed the jury to disregard the language in their deliberation." (p. 663.)

In *State v. Gutekunst,* 24 Kan. 252, it was said:

"Where counsel refers to pertinent facts not before the jury, or appeals to prejudices foreign to the case, it is the duty of the court to stop him then and there. The court need not and ought not to wait to hear objection from opposing counsel. The dignity of the court, the decorum of the trial, the interest of truth and justice forbid license of speech in arguments to jurors outside of the proper scope of professional discussion." (p. 254. See, also, *State v. Comstock,* 20 Kan. 650, 655; and *Hanks v. Cab & Baggage Co.,* 112 Kan. 92, 209 Pac. 977.)

In the case of *Weaver v. Winchell,* 116 Kan. 296, 226 Pac. 719, the remarks of counsel were criticized, but no objection was made thereto until in the motion for a new trial, and it was said on page 299:

"The remarks of counsel for plaintiff in the instant case could, and undoubtedly did, enter largely into the result of the jury's verdict and thereby prejudiced the rights of the defendant. Under the circumstances there should be a new trial."

Applying such rulings now more particularly to the question of insurance, it was said in the case of *Van Pelt v. Richards Paint & Paper Co.,* 132 Kan. 581, 296 Pac. 737:

"Evidence that defendants had indemnity against loss by reason of personal injuries was foreign to any issue in the case, and being incompetent and of a kind that might result in prejudice, counsel should have been careful to keep out any mention of that fact in the trial. To persist in suggestion to the jury that the defendants would not have to pay any damages that they might allow, and that some one else in the case would discharge the judgment, cannot be regarded as other than misconduct. Such a collateral matter injected into the case and kept before the jury is recognized by the courts to be highly improper and to constitute reversible error." (p. 587.)

In the recent case of *Bliss et al. v. Hartnett,* in the court of appeals of Ohio, 192 N. E. 818, it was held:

"A verdict will be set aside as excessive where the amount awarded is not warranted by the evidence and it is apparent that it was rendered under the influence of passion and prejudice resulting from the jury concluding from repeated suggestions by plaintiff's counsel that the defendant was insured." (Syl. ¶ 1.)

The case of *Holloway v. Telfer*, 136 Kan. 80, 12 P. 2d 826, was not reversed because the verdict was conceded to be not excessive, and there was nothing to show passion or prejudice of the jury, but in the opinion the practice of inferring there was liability insurance was criticized as follows:

"In cases of this character the persistent efforts of counsel to inject into the trial before a jury the inference that defendant is protected by indemnity insurance may constitute reversible error." (p. 83.)

In the recent case of *Coffman v. Shearer*, 140 Kan. 176, 34 P. 2d 97, an objection was made to the improper evidence as to insurance and overruled, and it is said in the opinion reversing the ruling and judgment that—

"It would appear that in a damage suit for personal injury the inadmissibility of such testimony and of the trial court's duty to exclude it is no longer a subject of fair debate in this jurisdiction. And not only so, but it is only when such testimony gets into the record inadvertently that its admission can be cured by a peremptory order of the court to strike it out and for the jury to disregard it. (*Holloway v. Telfer*, 136 Kan. 80, 12 P. 2d 826.) Where it has been deliberately brought into the case the presumption is that it was done to influence the jury improperly, and a mistrial should be declared." (p. 181.)

The first question and answer in which the plaintiff mentioned the question of insurance were as follows:

"Q. How long after Tuesday was it before you were able to recognize anyone or carry on an intelligent conversation? A. It was Friday before I had any idea even where I was; the doctors wouldn't let anyone see me except my folks; people just would push in anyway out of curiosity; I didn't have any idea anyone else was hurt besides me until the insurance agent called upon me and told me."

The following three questions were asked her later by her counsel, and answers given as follows:

"Q. Did any other doctor examine you after you were brought to the Winfield hospital? A. Doctor Hawke.
"Q. Dr. C. C. Hawke, of Winfield? A. Yes.
"Q. Was he employed by you to make an examination? A. No, the insurance company."

This last answer was immediately followed by the following motion and consent:

"The defendant moves to strike out the answer.
"Mr. Walker: It should be, and the jury instructed not to pay any attention to it."

Appellee argues that the last question was asked with the view

that possibly the defendant was sending a physician to examine her, but such knowledge is generally acquired from the client before she goes on the witness stand.

Without minimizing in any way the seriousness of the personal injury of this plaintiff, we are constrained to hold the verdict is excessive. Counsel for plaintiff cites a larger verdict in a similar case, but many smaller ones can be cited, and the question is, under all the facts and circumstances of the case, is it fair and reasonable, or is it excessive? We think it is excessive at $12,500. And if it is excessive, could it be the result of the prejudicial reference to insurance? This matter has been so thoroughly treated and discussed in the cases above cited, and other decisions along the same line rendered by this court, that it would serve no good purpose to further treat the subject here. Any reference to insurance in such a damage action is incompetent and is likely to arouse passion and prejudice in the minds of the jury, which we are constrained to believe it did in this case, resulting in the excessive amount of the verdict rendered. Under the rulings above cited and quoted a new trial must be granted with the hope that insinuations or references to insurance may be kept out of the next trial.

Appellant also criticizes some of the language used by counsel for plaintiff in the closing argument as referring to insurance. Counsel for appellee urges that no objection was made to it and that it was in response to part of the argument made by the appellant. The first point as to there having been no objection made at the time is covered in the earlier part of this opinion, and as to the second it may be said that it is not always safe to follow an opponent in argument into forbidden territory. We have no record of the language used by counsel for defendant in his argument, but he says he did not mention or refer to insurance. The record shows what is criticized in the closing argument of counsel for the plaintiff, which at most can only be said to emphasize what has already been considered to be sufficient to require a reversal and a new trial on account of the testimony of the plaintiff.

The judgment is reversed and a new trial is granted.