No. 29,018.

MARY E. ZIMMERMAN, *Appellee*, v. THE KANSAS CITY PUBLIC
SERVICE COMPANY, *Appellant*.

(286 Pac. 669.)

Opinion filed April 5, 1930.

*Fred Robertson, Edward M. Boddington, W. E. Stickel,* all of Kansas City,
and *Charles L. Carr,* of Kansas City, Mo., for the appellant.

*E. E. Martin* and *H. E. Dean,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: Plaintiff recovered judgment for damages caused
by injury sustained by her while a passenger on a street car operated
by the defendant, which appeals.

The plaintiff was a passenger on a northbound street car on
Thirteenth street south of Stewart avenue in Kansas City. The
street car collided with a truck loaded with coal going south. Just
before the collision the plaintiff had risen from her seat preparatory
to getting off the street car at Stewart avenue, the next stop. The

collision with the truck threw her to the floor and injured her. The evidence tended to prove that the motorman on the street car saw the truck before the collision; that the driver of the truck saw the street car before the collision; that the truck was being driven south on Thirteenth street; that part of the steering gear on the truck broke and the truck became unmanageable, and that the truck then veered to the east and ran into the street car.

Special questions were submitted to the jury and were answered as follows:

"2. What part of the North Coal Company truck collided with the northbound street car? A. Front left corner of truck.

"3. What part of the street car did the truck collide with? A. Front left.

"4. If you find for the plaintiff, of what did the negligence of the defendant consist? A. He did not properly observe the traffic and tracks ahead of him and did not apply the brakes as soon as he should have.

"6. Did the motorman have any warning that the truck was uncontrollable? A. No.

"8. How fast was the truck going at the time of the collision? A. Ten to fifteen miles per hour.

"9. How fast was the street car moving at the time of the collision? A. Seven to eight miles per hour.

"10. How far, in feet, did the truck run from the point on the west side of Thirteenth street where the steering device broke to the point where the truck struck the street car? A. Approximately 100 feet.

"11. Was the North Coal Company truck at any time prior to the collision on the northbound street-car tracks? A. Yes.

"12. How much time elapsed from the breaking of the steering device until the southbound truck ran across the southbound car rails into the street car? A. Two or three seconds.

"13. What did the driver of the truck do to stop the truck before the collision? A. Nothing.

"1. Did the driver of the truck lose control thereof at some point just south of Thirteenth and Stewart? A. Yes.

"2. If you answer question 1 in the affirmative, then state whether from the time the truck driver lost control of his truck he was doing anything which should have attracted the attention of the motorman of the street car. A. No.

"4. If the motorman in charge of the street car had been looking northward, and along the tracks, could he have observed the truck approaching in a place, or in such a manner that its continued approach constituted a danger of a collision, and have stopped his street car and thus avoided a collision? A. Yes."

■ The defendant argues that "the court erred in overruling the defendant's demurrer to the evidence at the close of plaintiff's case," and that "the court erred in refusing to give to the jury the peremptory instruction requested by the defendant" to return a verdict in

favor of the defendant. The question thus raised is presented in other forms. The jury found, and there was evidence which tended to prove, that although only two or three seconds of time elapsed between the breaking of the steering device and the collision, the street car could have been stopped in ten or twelve feet and that the street car could have been stopped in time to have avoided the collision. This evidence, together with inference that could properly be drawn from the facts concerning which there was no dispute, compelled the submission of the case to the jury for determination. It was not error to overrule the defendant's demurrer to the plaintiff's evidence, nor to refuse to give an instruction directing a verdict in favor of the defendant.

■ Another proposition urged by the defendant is that "the court erred in overruling the defendant's motion for a judgment upon the special findings of the jury *non obstante veredicto*." A careful examination of the special questions and the answers thereto reveals but one that might be considered favorable to the defendant. That is the twelfth, as follows:

"12. How much time elapsed from the breaking of the steering device until the southbound truck ran across the southbound car rails into the street car? A. Two or three seconds."

This question and answer should be read in connection with the eleventh, as follows:

"11. Was the North Coal Company truck at any time prior to the collision on the northbound street-car tracks? A. Yes."

The answer to the eleventh question established that the truck was on the northbound street-car track before the collision. The answers to the two questions numbered four established that the street car could have been stopped in time to have avoided the collision. It must be admitted that two or three seconds is a short time in which to stop a moving street car, but the street car was moving slowly and could have been stopped, according to the evidence, almost instantly. The answers to the special questions would not have justified a verdict in favor of the defendant.

■ It is argued by the defendant that "the court erred in permitting the introduction of incompetent, irrelevant, immaterial and prejudicial evidence over the objections of the defendant, which affected the substantial rights of this defendant and gave the adverse party an undue advantage." The evidence complained of was that which tended to show that the plaintiff had been a married

woman, that she had a family, that she performed her household duties, and that she had given birth to five children, four of whom were then living. The injury which the plaintiff claimed she sustained by reason of the accident was a dislocated kidney. One of the matters urged by the defendant which it sought to establish by evidence was that the plaintiff, on account of the shape of her body, its size, and the location of her internal organs, was predisposed to a moving kidney, which would be somewhat easily dislocated, which condition the defendant sought to prove would be aggravated by the birth of five children. But for the evidence of the defendant in endeavoring to show that the birth of the children had been a cause of the condition of the plaintiff's kidney, a serious question might be presented by the admission of the evidence complained of, but with the admission of the evidence on behalf of the defendant, the error, if there was one, was waived and abandoned by the defendant.

■ Misconduct of counsel is urged as error sufficiently prejudicial to justify a reversal of the judgment. This misconduct consisted of remarks made during the examination of witnesses and in argument to the jury. From the abstract we conclude that the trial was a hotly contested one. The record discloses that counsel were not considerate of each other. The court, after an examination of those remarks as disclosed by the record furnished to this court, is of the opinion that they were not so bad as to justify reversing the judgment.

■ Defendant argues that plaintiff was erroneously permitted to ask leading and suggestive questions. This matter has been examined, and the court is of the opinion that it is not of sufficient merit to warrant extended discussion. While questions that were somewhat improper may have been asked, the record does not disclose that any prejudice to the defendant resulted from the manner of asking questions.

Matters that are herein disposed of are by the defendant presented in other forms. It is not deemed necessary to discuss them further.

No prejudicial error has been shown; the judgment is affirmed.

JOCHEMS, J. (dissenting): The jury's finding No. 2 shows that the left front corner of the truck struck the left front corner of the street car. The driver of the truck was so hazy that he could give no intelligent idea of distances; all were guesses. But taking his guesses and giving the plaintiff the benefit of the maximum figures

so guessed by the truck driver, we find his testimony shows that his truck ran some 40 or 50 feet slightly angling to the east, before he realized something was wrong with the steering knuckle. Then (he testified), that about 25 or 30 feet before the truck and street car came together he had reached a position in the street where the left wheels of his truck were on, or approximately at, the west side of the west rail of the northbound track, and the truck then headed straight south along that rail and collided with the street car. The motorman's testimony is more clear. He testified that the truck started to veer to the southeast, heading toward his street car, about 20 feet before it hit his car, and that it hit at an angle, as shown by plat introduced by the defendant.

Finding No. 6 is conclusive to the effect that the motorman had no warning that the truck was uncontrollable. Finding No. 8 shows that the truck was going slowly—only 10 to 15 miles an hour. There was therefore no warning—no great speed, or anything to attract the motorman's attention. Finding No. 10 shows that the truck ran about 100 feet after the steering device broke, but again, No. 6 shows that the motorman had no warning that all was not well with the truck. Finding No. 12 states that only two or three seconds elapsed from the time of the breaking of the steering device until the truck ran across the rails of the southbound track and into the street car. Finding No. 13 states that the driver of the truck did nothing to stop the truck before the collision. The additional finding No. 2 is to the effect that the driver of the truck did nothing which should have attracted the motorman's attention.

Here we have a situation as follows: The truck was headed south; the street car north; the steering knuckle on the truck broke when the truck was about 100 feet from the street car. In the lapse of two or three seconds the truck ran 100 feet, in which distance it crossed over the southbound track and collided with the street car in such position that the left front corner of the truck in the direction in which it was headed, struck against the left corner of the street car, in the direction in which the street car was headed. The motorman had no warning that the truck was uncontrollable. The driver did nothing to warn the motorman. In the face of this situation the jury's answers to the two questions which are numbered in each instance No. 4, are simply inconsistent with the other findings, and with the physical facts. To say that in such a situation the motorman did not apply the brakes as soon as he

should have, or that he could have stopped the street car in time to have avoided the collision, as these findings numbered 4 do, is throwing upon him a degree of care far beyond that to which an ordinarily prudent man is held. It would require him to be a superman. He would have to possess some mystic or psychic power of being able to have the thoughts of the driver of the truck transferred instantly to his own mind in order to have stopped his car sooner, and under the circumstances, even if he could have been given the benefit of an immediate mental flash from the driver of the truck, a collision would still have been unavoidable.

Now, assuming that the truck ran 100 feet in the maximum time of three seconds found by the jury, and that at a point 30 feet away, it came over so that its left wheels were near the west rail of the northbound track, that being the maximum estimated by the truck driver, it then appears that the motorman had a little less than one second of time within which to bring his car to a stop, after seeing the truck take a position showing that a collision was imminent. It must be borne in mind that even from that point the motorman had no warning that the truck was uncontrollable, but according to the truck driver's guess it had reached a point where the motorman could see it was headed toward him in such a way that a collision was inevitable. The jury just roughly concluded that "he did not properly observe the traffic and tracks ahead of him and did not apply the brakes as soon as he should have" in its answer to the first question No. 4, and in reply to the second question No. 4 that "he could have stopped his car and thus avoided the collision," without properly analyzing the evidence. In coming to this conclusion they disregarded entirely the uncontradicted testimony of the motorman to the effect that he put on his emergency brakes and that thereafter the street car only ran seven or eight feet from the point where it was when he first noticed the coal truck coming toward the street car.

But disregarding the motorman's testimony entirely, these facts stand out in the findings: Distance from point where steering knuckle broke to point of collision, 100 feet (finding 10); time elapsed in running that 100 feet, two or three seconds (finding 12). Now, disregarding the specific findings that the motorman had no warning, and taking the truck driver's strongest guess as the basis for the jury's decision, we find that from the point where the truck

came over near the track on which the street car was running, and took up such a position that a collision was imminent, it was then 30 feet away from the street car. If the truck ran 100 feet in two or three seconds, allowing the maximum of three seconds time, it traveled 33⅓ feet in one second. But we can allow the plaintiff the benefit of any doubt and figure roughly that it took the truck one second to run that 30 feet. Traveling at that rate, the truck was going at a speed of 20.4 miles per hour, uncontrollable, coming down hill, directly toward the street car. The motorman had one second in which to act after the truck got in a position indicating danger. In finding No. 4 the jury says that the motorman did not apply the brakes as soon as he should have, thereby finding inferentially that he did apply the brakes. Now, if he did apply the brakes he had only one second of time in which to do so and bring his car to a stop. To say that the motorman did not stop his car as soon as he could have, after realizing the impending collision, when he had only one second in which to do so, is fixing liability on too fine a thread and on evidence which will not bear a careful scrutiny. Furthermore, there is a principle to the effect that where one acts in an emergency he is not held to the same strict accountability as where an emergency does not exist. In 45 C. J. 710, § 92, it is said:

"Where one is confronted with a sudden emergency without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Accordingly, if he exercises such care as an ordinarily prudent man would exercise when confronted by a like emergency, he is not liable for an injury which has resulted from his conduct even though another course of conduct would have been more judicious or safer or might even have avoided the injury, as under such circumstances the injury is regarded as an inevitable accident."

In *Barnhardt v. Glycerin Co.*, 113 Kan. 136, 213 Pac. 663, the court quoted the rule laid down in 29 Cyc. 434:

"Persons suddenly placed in a position of peril and impending danger do things which ordinarily would be acts of negligence, but acts done in such extreme circumstances are not to be judged by ordinary rules, and if an act has to be performed in a brief period with no time in which to determine the best course, negligence cannot be predicated on it." (p. 138.)

See, also, *Barzen v. Kepler,* 125 Kan. 648, 266 Pac. 69; *Clark v. Railway Co.,* 127 Kan. 1, 272 Pac. 128; *Nissly v. Detroit J. & C.*

*Ry.,* (Mich.) 131 N. W. 145; *Kantrowitz v. Metropolitan St. Ry.,* 71 N. Y. S. 394; Nellis on Street Railways (2d ed.), § 297.

Further, is not the verdict contrary to the physical facts? How could the motorman under such conditions have avoided the collision? The street car could not jump or duck out of the way. It had to stay on the track. A collision was inevitable. The motorman could have done nothing to avoid it. In the position the truck assumed, according to the driver's testimony, the collision could not have been averted. It can be argued that if the street car had been brought to a stop the force of the impact might not have been great enough to throw plaintiff off her feet, but this is wholly speculative.

It appears to me that the finding of the jury to the effect that the motorman did not stop as soon as he could have is contrary to the evidence. I cannot see in this record sufficient evidence to establish negligence on the part of the defendant. It appears to me that the plaintiff sued the wrong party. The proximate cause of plaintiff's injuries was not anything which was done, or omitted, by the street-car motorman, but was due to the breaking of the steering knuckle, caused by defect, or possibly wear and tear, and the fact that the truck thereby became uncontrollable. The breaking of the knuckle started a force in motion which resulted in plaintiff's injury. Right of recovery was against the coal company owning the truck and not the defendant in this case.