No. 29,776.

HELEN VAN PELT, *Appellee*, v. THE RICHARDS PAINT & PAPER COMPANY and GEORGE IRVINE, *Appellants.*

(296 Pac. 737.)

Opinion filed March 7, 1931.

*C. W. Burch, B. I. Litowich* and *LaRue Royce,* all of Salina, for the appellants.

*W. S. Norris,* of Salina, and *Allen Meyers,* of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The plaintiff, Helen Van Pelt, brought this action against the Richards Paint & Paper Company and George Irvine to recover damages for personal injuries to plaintiff, and to her property as the result of a collision of automobiles. The verdict of the jury was in favor of plaintiff, awarding her damages in the sum of $18,000. Judgment was accordingly rendered, and defendants appeal.

In the collision plaintiff suffered injuries to her neck, shoulders and arms, and the first vertebra of her neck was fractured, which experts testified was a permanent injury, from which she will suf-

fer pain as long as she lives. The collision occurred on a graveled highway near the city of Inman. Plaintiff's car was traveling west and defendants traveling east, their car being driven in the middle of the road. Noticing the position of defendants' car, plaintiff drove her car over on the right side of the road astraddle of a ridge of gravel deposited there. There is testimony that the car driven by Irvine was occupied also by Nat Harris, the vice president and manager of the Richards Paint & Paper Company. As he approached the plaintiff's car, Irvine began zigzagging back and forth on the road, and finally ran into plaintiff's car, which was clear over on the right side of the road and on the edge of it. Testimony was adduced to the effect that Irvine had been drinking intoxicating liquors and was drunk when the collision occurred. On behalf of defendant it was claimed that Irvine's eyes were dazzled by defective lights on plaintiff's car, and that this accounted for the zigzagging of his car and for the collision. Special questions were submitted to the jury which, with the answers, follow:

"1. Q. Did Irvine go to Hutchinson at the request of Harris for the purpose of bringing Harris' nephew home? A. No.

"2. Q. Was the left front headlight on plaintiff's automobile knocked out of proper line by a collision with a truck a short time prior to the collision with defendant? A. Yes.

"3. Q. If you answer question No. 2 Yes, had the light been fixed at McPherson before the collision? A. Yes.

"4. Q. Did the lights on plaintiff's automobile blind or dazzle the defendant, Irvine, just prior to the collision? A. No.

"5. Q. Did the plaintiff turn her automobile quickly to the right just before the collision? A. Yes.

"6. Q. Did the condition of plaintiff's lights cause or contribute to the cause of the collision? A. No.

"7. Q. Did the plaintiff by quickly turning to the right cause or contribute to the cause of the collision? A. No.

"8. Q. Was the plaintiff guilty of contributory negligence? A. No.

"9. Q. If you find your verdict for the plaintiff, how much do you allow? A. (1) For actual damage, $3,000; (2) for pain and suffering, $5,000; (3) for permanent injury, $9,900; (4) for punitive damages, ———; (5) for damage to automobile, $100."

Upon the evidence and findings the judgment for $18,000 was entered.

A number of errors are assigned on the admission of evidence which it is insisted are prejudicial and necessarily enhanced the allowance of damages. One of these was the admission of testimony

that plaintiff was the mother of seven children, but only two of them were in the automobile when the accident happened. Plaintiff was asked the question as to the number of her children and on objection the court stated that it was sustained, unless the children were with her. Counsel for defendant interposed and said that part of them were, and then the objection was overruled, and an answer given that she had seven children. Later, when the husband of plaintiff was testifying, he was asked, How many children do you have in your family? and over objection he was permitted to answer, seven and that three of them were in school. On redirect evidence he was allowed to state the age of the youngest child. On the issue presented the question for determination apart from the matter of negligence was the extent of plaintiff's injury and the damages caused by it. The fact that she had a number of children was not a ground for enhancing the damages. In a case to recover damages for personal injuries where the plaintiff was allowed to answer that he had a family which consisted of a wife and two children, the court declared that the admission of the evidence was a grievous error and it was made a ground of reversal. (*Railway Co. v. Eagan*, 64 Kan. 421, 67 Pac. 887.) There the court pointed out that the question was not a new one in this state and cited the case of *Kansas Pacific Rly. Co. v. Pointer*, 9 Kan. 620, where it was held:

"It was not competent in such a case for the purpose of showing the injuries or their character or extent or for the purpose of enhancing the damages which the plaintiff expected to recover for the plaintiff to prove his pecuniary or social condition—whether he was rich or poor, married or single or whether he had a family or not." (Syl. ¶ 8.)

*Union Pacific Rly. Co. v. Hammerlund*, 70 Kan. 888, 79 Pac. 152, was a suit for damages resulting in personal injury negligently inflicted where the defendant confessed liability but disputed the amount of plaintiff's claim for damages. The plaintiff introduced in evidence the fact that he was a married man and the father of three children, and this testimony went to the jury as a factor for determining the plaintiff's damages since no other question was open to investigation. The court held that the impropriety of this proof is not debatable, citing a number of cases, and for this and other reasons the judgment was reversed. In *Railway Co. v. Ringle*, 71 Kan. 839, 80 Pac. 43, a personal injury case, where testimony was admitted as to the size of the plaintiff's family and the number with

their ages was given, this practice was condemned by the court as erroneous and prejudicial, and it was said:

"This class of evidence has been condemned because of the prejudice or bias which it is likely to excite in the minds of a jury and in this case, after carefully examining the evidence relative to the character of the injury, we are not prepared to say in view of the size of the judgment that they were not unduly influenced thereby."

See, also, *Zimmerman v. Kansas City Public Service Co.*, 130 Kan. 338, 286 Pac. 669.

The admission of the evidence was manifest error, but whether, in view of other grounds to be noted later, it should be regarded of itself as sufficient to require a reversal need not be determined.

Complaint is made that plaintiff's counsel persistently brought before the jury the fact that defendants carried liability insurance which would protect them against any judgment, however large, that might be rendered against them. The insurance was with a foreign corporation, the Employers Liability Assurance Corporation, Ltd., which had its principal office and place of business in London, England. The fact was brought to the attention of the jurors, first in the examination of their qualifications, asking each of them if he was a stockholder of or agent for the Employers Liability Assurance Corporation, Ltd. When objections were made to the questions the court stated that the testimony in the case would not show defendants to be protected by insurance. It appears that counsel for plaintiff asked each juror if he had any interest in that company, and it is argued that it could not have been a good-faith inquiry, as the plaintiff's counsel, notwithstanding warnings of the court, thereafter pursued a course which proved that such insurance was carried by defendants. In an examination of proposed jurors on their *voir dire* it is not incompetent to inquire, in good faith and within reasonable limits, whether such jurors are connected with or interested in insurance companies, and by reason of such interest might be disqualified to act. (*Engle v. Bowen*, 122 Kan. 283, 251 Pac. 1108, and cases cited.) Such inquiries, however, if not made in good faith and within reasonable limits, but are made for some ulterior purpose as, for instance, the creation of prejudice in the minds of the jurors so as to enhance the damages allowed, could not be considered as other than patent error. It was quite unlikely that a juror in a rural county of Kansas would be a stockholder or interested in a corporation of London, England, and it is contended

by defendants that the subsequent action of plaintiff indicates clearly enough that the inquiries were not made to test the qualifications of the jurors. Upon the trial, a witness was asked if he had given a statement in the case.

"Q. Did you ever give a statement in this case to anyone? A. Yes, sir.

"Q. Who to? A. Well, the man's name was William Carey, of Carey, Tincher and——

"Q. Williams and Carey and somebody, whereabouts? A. At Hutchinson, attorneys for his insurance company."

An objection being made, the court said, "It will be stricken out and the jury will disregard that." The next witness called was asked:

"Q. Mr. Frinfrock, did you give a statement of any kind in this case to anyone? A. Yes, sir; to the insurance company's attorneys."

This was objected to, and the court said:

"Is that the purpose of that question?

"MR. NORRIS: I will state to the court and jury that Mr. Royce has been holding and flashing a statement in his hand trying to intimidate him.

"MR. ROYCE: I had a paper just like this. Did you know that was a statement you had ever made?

"THE WITNESS: I didn't know and I didn't care.

"Q. Have you said anything different from this time from what you said in any statement?

"MR. ROYCE: Oh, I object to that.

"THE COURT: The objection is sustained."

The witness proceeded to answer; then the court said:

"THE COURT: Wait; don't answer that. How is that redirect examination? Mr. Royce hasn't asked about a statement. He has a little roll of paper there. I don't know what this is; did you?

"THE WITNESS: No.

"THE COURT: You didn't suspect that was a statement?

"THE WITNESS: I wouldn't care.

"THE COURT: You didn't notice it, did you?

"THE WITNESS: No.

"THE COURT: I hope it won't be necessary to discharge this jury here."

Another witness who had been injured in this same accident testified:

"Q. Did you make any claim against these people?

"MR. ROYCE: Oh, we object to that as incompetent, irrelevant and immaterial.

"THE COURT: The objection is sustained. It is competent to show how she was hurt there just to show the character of the accident, but then as to what claims she has or as to her suffering or treatment, I don't believe that that would be material in this case.

"Q. Well, have you any interest in this Van Pelt case at this time, of any kind? A. No; the insurance company settled with me.

"Mr. Royce: We object to that and ask it be stricken out.

"The Court: It will be stricken out and the jury will disregard it.

"Mr. Norris: I didn't call for that remark. She had no interest or any claim against anyone on account of her accident.

"The Court: Proceed."

Then a medical witness was called who testified as follows:

"Q. Now, after Mrs. Van Pelt left your care at McPherson, Kan., doctor, did you later make an examination of her at her home at Manhattan, Kan.? A. I did.

"Q. I wish you would state to this jury, doctor, who ordered you to make that examination.

"Mr. Royce: We object to that as incompetent, irrelevant and immaterial.

"The Court: Objection sustained. It is immaterial. Let him state what examination he made and what he observed.

"Mr. Meyers: Now, if the court please, I would like to be heard on that.

"The Court: As to who ordered—

"Mr. Meyers: It goes to show that this witness has been subpœnaed by both sides in this lawsuit, and I want to know who ordered him to make this examination.

. . . . . . . . . . . . . . . .

"The Court: You know he will say the insurance company, don't you?

"Mr. Meyers: I don't know how he will answer the question, your honor. I want to ask him who he made his report to.

"The Court: You may answer the question and I will see whether it will be necessary—what action for the court to take.

"Mr. Norris: If your honor please, I don't want to do anything.

"The Court: Haven't you talked to this witness?

"Mr. Meyers: I have never talked to that witness in my life, except over long-distance telephone.

"The Court: Then you are not anticipating what his answer will be? All right; answer the question. Doctor, who asked you to make the examination?

"A. I got a call to go to Manhattan, I believe, and meet Dr. Colt or Dr. Cave. I always get those men mixed. Dr. Colt—from Wichita, as I remember the insurance company. I don't remember the name. One of the men from the insurance company asked me if I would examine the case or go up there.

"The Court: Who was it, you say? A. I think it was some representative of the insurance company.

"The Court: Certainly. Go on now. Proceed with it. We will get error in this case that will make it necessary for the court to take action. Go on, the bars are down. Proceed."

The witness stated that he and another doctor made an examination of plaintiff at Manhattan and had embodied the results of the

examination in a report, and then said that he had "a copy of the letter that I late—I had a request from some representative—," and then objection was made. The court responded: "Don't do any harm. It is some representative of some insurance company. You can't get anything worse in the record than you have now. Proceed. Answer. The court will give him permission."

In the direct examination of plaintiff she stated that Harris told her in a conversation that: "We work for the Richards paint and paper people over at Salina. He said they have got plenty of insurance, and we are going to take care of everything," he said, "Don't worry about anything," and later in telling of the conversation between her husband and Mr. Harris she testified that her husband said, "Well, you agreed to take care of all those bills and pay everything, and you never done nothing." He, Harris, said, "Well, that was up to the insurance company to do that." Plaintiff testified about her examination by Doctor Colt and Doctor Heaston and was then asked:

"Q. Did Doctor Colt or Doctor Heaston tell you any reason why they were there?

"MR. ROYCE: We object to that as incompetent.

"THE COURT: Objection sustained."

Later her husband was upon the stand and was asked concerning the same conversation and testified in practically the same language, that it was up to the insurance company.

At the conclusion of plaintiff's evidence defendants moved to strike out the testimony concerning the insurance company and instruct the jury to disregard it. The motion was denied. The record in the case discloses a marked case of diligent suggestion that defendants were protected by insurance. The effort to bring that fact to the attention of the jury continued after repeated warnings of the court that the testimony was inadmissible and might be fatal to any verdict obtained. Evidence that defendants had indemnity against loss by reason of personal injuries was foreign to any issue in the case, and being incompetent and of a kind that might result in prejudice, counsel should have been careful to keep out any mention of that fact in the trial. To persist in suggestion to the jury that the defendants would not have to pay any damages that they might allow, and that some one else in the case would discharge the judgment, cannot be regarded as other than miscon-

duct. Such a collateral matter injected into the case and kept before the jury is recognized by the courts to be highly improper and to constitute reversible error. If the matter of insurance unexpectedly slips out in the case and is promptly withdrawn by counsel and the jury directed to disregard it, and where it is clear that no prejudice was intended or could have resulted, a reversal does not necessarily follow. (*Bagnall v. Hunt*, 131 Kan. 805, 293 Pac. 733, and cases cited.) Here, however, the prejudicial matter was persistently injected into the case from the impaneling of the jury to the conclusion of plaintiff's evidence, and then the motion to strike it out was denied by the court. At the beginning of the trial the court attempted to keep out the improper testimony, but after wrestling with counsel as to its exclusion the court finally surrendered, and after a witness had brought in the matter of insurance, said: "Go on now, proceed with it. We will get error into this case that will make it necessary for the court to take action. Go on; the bars are down." At another time when a doctor was testifying about being requested to make an examination and spoke of a letter containing a request from a representative of— and was interrupted, the court said, as already shown: "Don't do any harm; it is some representative of some insurance company. You can't get anything worse in the record than you have now. Answer. The court will give him permission."

On the motion for a new trial it was shown by affidavit that when counsel for plaintiff stated that he did not know what answer the doctor would make to the inquiry as to who ordered him to make the examination of plaintiff, he did know that the doctor had been employed by a representative of the insurance company to make the examination and report the result of it, and further that he had written a letter to the insurance company recognizing that the examination had been made, and that the conclusions of the examiners were not satisfactory to counsel or his clients. On the whole record, it must be held that the course pursued by the plaintiff requires a reversal of the judgment so far as the award of damages is concerned. It should be added that the question as to the financial condition of the defendant Irvine should have been excluded. It was brought out that he had no real estate and only some household goods and clothing necessarily exempt from execution. It was left for the jury to infer that there was no chance to collect a judgment

from Irvine, and therefore if any damages were to be recovered the plaintiff must look to the other defendant alone. Again, it might have occurred to the jury that so far as Irvine was concerned it was unnecessary to measure the damages carefully since no judgment could be enforced against him. The financial condition of the defendant was not an issue in the case, and whether either defendant had property or means to meet a judgment that might be obtained was not material and not admissible. (*Blackman v. Honer,* 119 Kan. 404, 239 Pac. 750.)

The errors noted affect only the issue of the damages to be allowed. The findings as to the negligence of defendants are well sustained by the evidence. It was contended that the Richards Paint & Paper Company was not so connected with the operation of the car as to be responsible for the collision, but a reading of the evidence satisfies the court that the finding as to its responsibility is sufficiently supported by the evidence. There is no necessity to try the issues that have been determined, merely because other issues which are separable in nature have been erroneously determined. The only matter affected by the errors which have been pointed out is the amount of damages to which plaintiff is entitled, and while there must be another trial of that issue we think the new trial should be confined to the question of recoverable damages. In the recent case of *Carlgren v. Saindon,* 129 Kan. 475, 283 Pac. 629, it was decided that:

"Where the pleadings in an action present several controverted issues, and at the trial some of the issues are determined and others either are not determined or are determined improperly, and where the issues determined and those not determined are sufficiently distinct from each other that there is no necessity of trying all the issues in order to determine those which had not been determined, there is no occasion to retry the issues determined." (Syl. ¶ 3.)

See the many cases cited therein to the effect that a retrial, if necessary, should be of the issues only which have not been properly determined.

For the errors mentioned, the judgment is reversed and the cause remanded for a new trial only on the issue of the extent of plaintiff's injury and the amount of damages she is entitled to recover.

BURCH, J., not sitting.