No. 31,812

Ressa Irene Scott, *Appellee*, v. Frances Vaughn, *Appellant*.

(37 P. 2d 1012)

Opinion filed December 8, 1934.

*James F. Getty*, of Kansas City, for the appellant.

*Arthur J. Mellot, Donald C. Little, Hugh E. Brownfield*, all of Kansas City, *Clif Langsdale* and *Denton Dunn*, both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action for damages for personal injuries sustained in an automobile casualty. The jury answered special questions and returned a verdict for plaintiff. Defendant has appealed.

Briefly the facts may be thus stated: Plaintiff, for about ten years prior to the casualty in March, 1931, had been employed on a commission basis to solicit advertising for a magazine, her earnings having been almost $200 a month. Soon after noon on the day in question she had solicited advertising at a florist's shop on Broadway in Kansas City, Mo., near Valentine Road, and had walked on the street, which is paved, into the safety zone maintained under the city ordinance authorized by statute for passengers about to board street cars. She was standing in the safety zone waiting for a northbound street car, which she planned to take to keep an appointment with her dentist. Defendant, driving north on Broadway, drove into the safety zone in which plaintiff was standing in such a way that the right-hand side of her car came in contact with plaintiff, knocking her down. The rear wheel of the car ran over plaintiff's leg, breaking both bones about two inches above the ankle. There was a conflict in the evidence as to just how plaintiff came in contact

with the car, it being defendant's theory that she stepped to the left as defendant drove by the safety zone, but there was evidence that plaintiff's car ran into and bumped over the button, five inches high, which marked the south line of the safety zone, and that the car swerved so that the side of it struck plaintiff. The bones of her leg were crushed; it was a comminuted fracture. She was taken to the hospital, where the surgeon manipulated the bones and placed them as nearly in position as possible and put her leg in a plaster cast. She was in the hospital six weeks. When she went home it was necessary for her to use crutches for more than a month. She was able to return to her work in about three months, but the injury still gave her trouble at the time of the trial more than two years later.

Appellant first contends that her motion for judgment on the answers to special questions, notwithstanding the general verdict, should have been sustained. This is upon the theory that the answers show plaintiff to be guilty of contributory negligence as a matter of law. Answering special questions, the jury found that plaintiff was inside the safety zone at the time of the collision; that defendant ran her car over a button at the south end of the safety zone at a speed of approximately twenty miles per hour; that plaintiff was not directly in front of defendant's car, but at one side of it, and that the right side of defendant's car came in contact with plaintiff. The jury was unable to say from the evidence whether plaintiff looked toward the south when she entered and while she was in the safety zone. The jury further found plaintiff could have avoided the accident if she had been watching for vehicles from the south or if she had seen defendant's car in time; that plaintiff did exercise care and prudence for her own safety at and just prior to the collision by standing in the safety zone; that defendant did not exercise ordinary care and prudence at that time by driving into the safety zone; that there was nothing to prevent defendant's seeing plaintiff within the safety zone, and nothing to prevent defendant from driving her car to the right of the safety zone.

Appellant argues that, although plaintiff was standing in the safety zone, care for her own safety required that she keep a lookout for cars coming from the south. We think the most favorable thing to say for appellant in that respect is that it was a fair question to submit to the jury. Normally, one standing in a safety zone might well expect automobiles would not be driven into it.

Appellant contends the court should have granted a new trial

because of misconduct of plaintiff in this: Plaintiff had testified that just after her injury defendant stopped her car, came to plaintiff, saw that she was injured, expressed the view that she should be taken to a hospital, and asked plaintiff what hospital she wanted to go to. Plaintiff named a hospital, to which she soon was taken in an ambulance. Soon after reaching the hospital plaintiff had a further talk with defendant. Plaintiff testified:

"I later had a further talk with her in the waiting room at the Research Hospital. I immediately began to worry about how long I was going to be laid up. And she said, 'My dear, all you have to worry about—all you have to think about is getting well. I will take care of you.'

"Q. What, if anything, was said about—well, what else did she say, now, leaving out anything I may have told you was not admissible—what else·did she say? A. Well—

"Q. With particular reference to paying the charges, or anything like that.

"DEFENDANT'S COUNSEL: Objected to as incompetent, irrelevant and immaterial, and move to strike it out.

"THE COURT: Overruled.

"DEFENDANT'S COUNSEL: We except.

"THE WITNESS: May I go ahead?

"THE COURT: You may answer.

"A. She said, 'I have insurance'—

"Q. (Plaintiff's counsel, interrupting) No, I didn't want you to say that.

"DEFENDANT'S COUNSEL: We move to strike that out.

"PLAINTIFF'S COUNSEL: That may be stricken out.

"DEFENDANT'S COUNSEL: And I ask to have the jury discharged.

"PLAINTIFF'S COUNSEL: Well, I was trying to avoid that, and I ask that the jury be instructed, rather than discharged.

"DEFENDANT'S COUNSEL: Now, that is not the point. I exonerate my friend (plaintiff's counsel), but it is in and this lady has put it in, and I ask to have the jury discharged.

"THE COURT: The motion to discharge the jury will be denied.

"DEFENDANT'S COUNSEL: Except.

"THE COURT: But the jury will be very careful not to consider the statement relating to insurance. That will be stricken out. The case must be tried on its merits, regardless of anything of that kind."

At the close of the evidence, among the instructions the court gave the jury was the following:

"You are again instructed to utterly disregard the matter of liability insurance which was inadvertently mentioned by the plaintiff in her testimony. The matter of insurance is not involved in this case, and must not be mentioned or referred to by any juror or considered by you in your deliberations upon this case. This is a trial between the plaintiff and the defendant, two individual persons. No insurance company is a party to this case. No verdict nor the amount thereof should be based upon or influenced by the

fact that the defendant had or did not have liability insurance. If a verdict is rendered against the defendant, she individually is legally bound to pay it. Even if there is insurance, of which there is no proof, the insurance company, if any, may be or may become insolvent and unable to pay the amount of such verdict, if any, before this case is finally determined. Therefore, you should banish from your mind any impressions which you may have received relating to this matter."

Appellant contends that obviously plaintiff's counsel, previous to her being called as a witness, had instructed her not to testify to what defendant had said about having liability insurance, and notwithstanding this caution by her counsel plaintiff had persisted in injecting that matter into the testimony, and that this was prejudicial error, citing *Van Pelt v. Richards Paint & Paper Co.*, 132 Kan. 581, 296 Pac. 737; *Coffman v. Shearer*, 140 Kan. 176, 34 P. 2d 97, and allied cases, and contends that the court's instruction above quoted further emphasized the error. We cannot concur in this view. There was no persistent effort on the part of plaintiff to inject this question into the case, and no ruling of the court permitting that question to go to the jury, as in the cases cited by appellant. Here it appeared that plaintiff's testimony would have shown that defendant stated she had insurance, and plaintiff's counsel, knowing that, was endeavoring to get from the plaintiff, as a witness, all said by defendant except the part relating to insurance. Plaintiff had testified that defendant, among other things, had said: "I will take care of you." Apparently her counsel thought she would testify to something said more specifically with reference to paying the charges, but when he asked for specific language plaintiff found difficulty in expressing it without using the words attributed to defendant, "I have insurance." Plaintiff's counsel stopped her at once, consented the statement should be stricken out, the court struck it out, and told the jury to be very careful not to consider the statement—that the case must be tried on its merits regardless of anything of that kind. The trial court regarded the statement of the witness as having been made inadvertently, and gave the jury positive instructions to disregard it and to banish from their minds any impressions they had received relating to it. It is not infrequent in the trial of a case that some improper statement may be made by a witness or an attorney. The ordinary method of handling such matters is for the court promptly to advise the jury not to consider the matter and further to instruct the jury to that effect. Much

more flagrant violation of the rule against injecting the idea of indemnity insurance into a case was so handled, with approval of this court, in *Holloway v. Telfer*, 136 Kan. 80, 12 P. 2d 826. In this connection see, also, *Sponable v. Thomas,* 139 Kan. 710, 718, 33 P. 2d 721.

In connection with this point appellant argues that the verdict in this case was excessive. The jury was not asked to state separately how much was allowed for loss of time, medical expenses, pain and suffering, and other items entering into the amount allowed. There was evidence, however, that items of actual expense, including loss of time, aggregated more than $1,700, leaving less than $1,800 for pain, suffering and permanent injury. There is nothing excessive in that allowance under the evidence in this case.

We find no error in the record. The judgment of the court below is affirmed.