No. 42,469

VERNON D. CAYLOR, *Appellee*, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a corporation, and WILLARD E. GENTRY, *Appellants*.

(368 P. 2d 281)

Opinion filed January 20, 1962.

*W. E. Treadway*, of Topeka, argued the cause, *C. J. Putt, J. B. Reeves* and *William A. Walton*, all of Topeka, were with him on the briefs for the appellants.

*John A. Bausch*, of Topeka, argued the cause, *L. M. Ascough, E. Edward Johnson* and *Wayne T. Stratton*, all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a damage action for personal injuries sustained by the plaintiff in an automobile accident. The defendants, the Santa Fe Railway Company and its truck driver, Willard E. Gentry, have duly perfected an appeal from a verdict and judgment for the plaintiff in the sum of $15,000.

The questions presented by the appellants are (1) whether the

trial court erred in its failure to declare a mistrial after the plaintiff (appellee) in his own testimony injected the subject of appellants' insurance, and in failing to admonish the jury by instruction or otherwise to disregard such testimony, and (2) whether the trial court erred in permitting the appellee's counsel, in closing argument, to display a chart itemizing damages on a mathematical formula basis.

The appellee says that basically the question involved is whether *prejudicial* error was committed in the trial court's ruling on the foregoing points so as to warrant a new trial for the appellants.

On the 27th day of November, 1959, at about 9:45 o'clock in the morning, Vernon D. Caylor (plaintiff-appellee) was driving his automobile east on Seventh Street in the City of Topeka, Kansas, between Jackson and Kansas Avenue. While so doing he stopped in his lane of traffic to permit another vehicle to back from the curb, and while stopped he was struck violently from behind by a Santa Fe truck driven by Gentry.

In his action Caylor sought damages for injuries to his back, neck and head in the sum of $35,000. Upon appropriate pleadings the case went to trial. The only evidence presented by the appellants was that of a medical doctor. Gentry, the Santa Fe driver, did not appear at the trial nor did he testify, either in person or by deposition.

The appellants concede the evidence presented at the trial was sufficient to support the findings of the jury which resolved the issues of negligence against them.

The evidence discloses that Caylor was hospitalized and in traction for about eight days; that he was off work for twenty-five days, although the company records show he lost only nineteen working days because of hospital or medical reasons. At the time of the trial, almost a year after the accident, Mr. Caylor testified he still had pain and headaches. For a period of about one year before the accident Mr. Caylor worked 112 hours of overtime, but for an approximate equal period after the accident he worked only 3.2 hours overtime. It was shown that Mr. Caylor's work at the Goodyear Rubber Plant was heavy work, and according to his testimony he was unable to do overtime work after the accident; that he had difficulty with his neck and shoulders and in his ability to get around after the accident; that this condition still existed a week before the trial; and that he could not perform some of the jobs he had done before the accident. At times he would request assistance from fellow employees when the lifting was particularly heavy.

Dr. Roberts, Caylor's family physician, testified that Caylor sustained acute cervical strain and headaches, back pain, pain in both arms and numbness; that he suffered severe pain and was in tears on one occasion; that he never had any trouble with his neck and spine before the accident and was in good health. Dr. Roberts testified that Mr. Caylor had some permanent disability.

Dr. Pusitz testified that Mr. Caylor's difficulty involved partial tear of ligament structures and nerve injury, all related to the accident. That on subsequent examinations Caylor still had pain, particularly when lifting, twisting or bending. He was of the opinion that Caylor had a permanent partial body disability. In describing how this disability would affect this man and his ability to do manual labor, Dr. Pusitz testified:

"The disability in manual labor will be that if he overdoes, he will have disturbance and that the machine will wear out more quickly than in a person who doesn't have this disability."

He further testified that in his opinion Mr. Caylor will continue to have some pain and discomfort in the future.

The appellants contend the appellee voluntarily injected the word "insurance" into the case, which, the appellee argues, seems to be an assertion that the testimony concerning insurance was intentionally given. The only evidence in the record concerning insurance appears in the direct examination of Caylor as follows:

"Q. Now after you made your report to the police or with the police what did you do then?

"A. Well, may I go back when I called the police?

"Q. Yes.

"A. Well, I called the police, the first thing they asked me was there anybody hurt seriously. I told them as far as I knew I was the only one hurt and I thought I'd be all right. They wanted to know if I wanted an ambulance and I told them no, I didn't think it was necessary. So after they made their investigation there and we exchanged our insurance companies and, you know, names—

"MR. TREADWAY: (Interrupting) To which the defendant certainly objects. May counsel approach the bench, please?

"THE COURT: Yes.

"MR. TREADWAY: The defendant Santa Fe Railway Company at this time moves for a mistrial for the reason that the witness has testified that there was an exchange of insurance papers.

"MR. BAUSCH: That was not brought out as any overt act on our part.

"MR. TREADWAY: I think it's prejudicial because we do not carry insurance. The inference was left with the jury that we carry insurance, but we are self-insured.

"The Court: Do you want to stipulate to that fact?

"Mr. Treadway: No. He's testified they were exchanged.

"The Court: Possibly the plaintiff would stipulate that you do not carry insurance.

"Mr. Bausch: I don't know whether they do or not.

"The Court: I will overrule the objection."

Here the appellants contend the ruling of the district court was manifestly one of prejudicial error as evidenced by the excessive amount of the verdict. They point out that the testimony concerning the appellants' insurance was permitted to *remain of record* as a part of the appellee's evidence in chief for the unqualified consideration of the jury; that their prompt objection and the overruling of their motion for a mistrial had a prejudicial effect upon the jury particularly against the Santa Fe Railway Company as a self-insurer. It is argued this ruling denied the appellants a fair and impartial trial on the issues of liability and of damages.

While the appellants here did not request the trial court to admonish the jury to disregard the appellee's testimony concerning insurance, this was unnecessary. The trial court should have promptly advised the jury not to consider the matters when it overruled the motion for a mistrial, and it should have further instructed the jury to that effect. (*Scott v. Vaughn,* 140 Kan. 529, 37 P. 2d 1012.) In *Pool v. Day,* 141 Kan. 195, 40 P. 2d 396, the plaintiff voluntarily injected testimony of insurance into the case and it was emphasized that the trial court had a duty to see that prejudicial matter did not reach the jury, saying:

". . . whether or not objections and motions to strike out have been promptly made, it has been held to be the duty of the trial court to carefully exclude all highly prejudicial matter from the jury, and admonish the jury to wholly disregard the same in the hope thereby of avoiding a mistrial or the necessity of a new trial on account of the possible prejudice and passion created thereby in the minds of the jurors." (p. 200.)

In *Coffman v. Shearer,* 140 Kan. 176, 34 P. 2d 97, the plaintiff's wife referred to the defendant's liability insurance in the amount of $50,000, and upon motion of counsel for the defendant the trial court refused to strike such testimony. Plaintiff's counsel said they just wanted "to show the whole conversation." The deliberate introduction of evidence to show the defendant had stated he carried a large amount of liability insurance was held to be prejudicial error on appeal. In the course of the opinion it was said:

". . . It would appear that in a damage suit for personal injury the inadmissibility of such testimony and of the trial court's duty to exclude it is

no longer a subject of fair debate in this jurisdiction. And not only so, but it is only when such testimony gets into the record inadvertently that its admission can be cured by a peremptory order of the court to strike it out and for the jury to disregard it. (*Holloway v. Telfer*, 136 Kan. 80, 12 P. 2d 826.) Where it has been deliberately brought into the case the presumption is that it was done to influence the jury improperly, and a mistrial should be declared. (*Van Pelt v. Richards Paint & Paper Co.*, 132 Kan. 581, 296 Pac. 737; *Crossler v. Safeway Stores, Inc.*, 51 Ida. 413, 80 A. L. R. 463; 20 R. C. L. 178.) . . ." (p. 181.)

In the foregoing case the further admonition was given that counsel for plaintiff should have made it clear to his witness before she took the witness chair that the question of defendant's negligence was in no way related to the fact, if true, that he had insurance covering his liability for damages, and he should have cautioned her that she would inevitably ruin her husband's seemingly good case if the matter of such a fabulous amount of liability insurance was lugged into the record.

This court has repeatedly stressed the impropriety of injecting the question of insurance into damage actions in which insurance companies are not parties, when it is obvious that the purpose is to produce prejudice in the minds of the jurors. Where the offending party secures a verdict and the opposing party makes timely objection, and otherwise has adequately protected the right of review, the offense is regarded as so inherently prejudicial as to require reversal unless unusual circumstances are shown which justify affirmance. (*McGuire v. McGuire*, 152 Kan. 237, 240, 103 P. 2d 884.)

In *Cannon v. Brown*, 142 Kan. 700, 51 P. 2d 1007, prompt action of the trial court in advising the jury that it should not consider an inadvertent reference to the defendants' liability insurance prevented the defendants from being prejudiced, where the verdicts were not excessive and there was very little dispute as to the facts, although the court admonished that it frowns on the practice of using one means or another to give the jury a hint that the defendant is covered by liability insurance. (See, also, *Shively v. Burr*, 157 Kan. 336, 139 P. 2d 401.)

Cases where the defendant himself brings the fact of liability insurance into the record are quite another matter and distinguishable. (*Sponable v. Thomas*, 139 Kan. 710, 33 P. 2d 721; and *Dirks v. Gates*, 182 Kan. 581, 322 P. 2d 750.)

In the case at bar the mention of insurance by the appellee was

in response to a question completely unassociated with the subject of insurance. The refusal of the trial court to sustain the appellants' motion for a mistrial and the denial of the motion for a new trial amount to a finding that the testimony as to insurance got into the record inadvertently. (*Cannon v. Brown,* supra.)

It may be said the failure of the trial court to promptly advise the jury not to consider the testimony concerning insurance, and to further instruct the jury to that effect, was clearly erroneous. Nevertheless, counsel for the appellants admitted in argument before this court they did not desire any further reference made by the trial court to the jury on the matter of insurance, since this would only serve to emphasize the subject of insurance in the minds of the jurors. For this reason counsel requested no further action by the trial court. Under these circumstances, taking into consideration the evidence presented by the record and the amount of the verdict, the court is of the opinion that such error was not prejudicial to the appellants.

A case somewhat analogous is *Thompson v. Barnette,* 170 Kan. 384, 227 P. 2d 120. There reference to the defendant's insurance company was inadvertently made by the plaintiff, and upon the defendant's renewal of his motion for a mistrial counsel for plaintiff consented that the answer to the question be stricken and the jury admonished to disregard it, but counsel for the defendant refused to agree to such procedure on the ground the damage had already been done, and that any further reference to the subject of insurance would merely magnify and emphasize in the minds of the jurors the probability and fact that the defendants were covered by insurance. As a result, no admonition or instruction concerning the matter was given to the jury. In the opinion the court said:

". . . as we read this record, it is not made to appear that any prejudice resulted from what manifestly appears to have been an inadvertent reference on the part of plaintiff while on the witness stand. Indeed, the trial court in denying the motion for a mistrial and to discharge the jury commented that he was well satisfied there had been no intentional misconduct by counsel and that the mention of insurance was purely inadvertent. We feel compelled to agree, . . ." (p. 389.)

In the opening argument after all the evidence had been presented counsel for the appellee unveiled a large chart exhibiting a

mathematical formula for evaluating certain elements of damages as follows:

"Vernon Caylor
Age 29

| | |
|---|---:|
| Life Expectancy | 38.6 yrs. |
| Medical Expense | $ 717.00 |
| Loss of Wages | 1 144.00 |
| Pain & Suffering | 3 500.00 |
| Future Pain & Suffering | 5 000.00 |
| (Approx. $130.00 per year) | |
| Permanent Disability | 14 040.00 |
| ($30.00 per mo. for 39 yrs.) | |
| Total Damage | $24 401.00" |

Over objection by the appellants the trial court permitted the foregoing chart to be displayed on an easel to the jury. Comment was made on the chart in the appellee's closing argument. In the course of deliberations the jury requested to see the chart used and referred to by counsel for the appellee in closing argument, but this request was refused by the trial court.

At the time of unveiling the chart, appellee's counsel told the jury:

". . . The Court has instructed you that you can consider in assessment of damages pain and suffering, both past and present, and future, permanent disability, and loss of wages, and we have submitted to you here what we feel is a fair figure for this consideration. This is broken down in detail and Mr. Bausch will comment in more detail on those figures in just a moment."

In closing argument appellee's counsel said:

"Pain and suffering is worth something. You can't see it. That is up to you folks. I suggest $3,500 up to date. He's going to have it in the future. I suggest $5,000 for that. That is $130 per year for the rest of his life.

"Now as to his permanent disability, I suggest to you folks, and this is my suggestion only, with a life expectancy of 38 years, $30 a month, total fourteen thousand some-odd dollars. It comes out to this figure of $24,000. I suggest these figures at $30 per month because the government pays their people on less disability than that. You know of your own knowledge the workmen's compensation amounts that they draw. . . . There is nobody else to blame but them and he cannot come back, so we submit that when you consider this, consider it seriously and allow him what you in your heart would want to have for your husband or yourself if you were in Mr. Caylor's seat."

No question is raised on this appeal as to the items of "medical expense" and "loss of wages" shown on the chart. These are supported by evidence in the record and there is no discrepancy in these amounts which total $1,861. It is conceded these items of special damages could properly be used in argument to the jury.

The appellants contend, however, the fact that a verdict of $15,000 was returned for the appellee, clearly shows that the jury was seriously and prejudicially impressed by the chart and formula in allowing such substantial payment for pain and suffering and permanent disability. The appellants argue that there was no evidence in the record of any monetary value for pain and suffering, past, present or future, and that the value of such elements of damages is incapable of proof by any competent evidence. They further argue there was no evidence, in monetary value, of any permanent disability, and there was no evidence of the extent, kind or degree of any permanent disability.

The appellants argue: "That the jury considered this chart and mathematical formula as material evidence in support of appellee's claim for damages is shown by the fact that during their deliberations, the jury requested that it be permitted to have and to see in their jury room, this chart used and referred to by appellee in argument. While this request was not granted, the District Court did not protect the appellants from the prejudicial effect obvious in the minds of the jurors by calling them back into the court room and informing or instructing them specifically that this chart and mathematical formula was not in evidence and was not to be considered as evidence."

In recent years there has been an increasing resort to the blackboard and mathematical formulas by claimants' counsel for the professed purpose of securing "a more adequate award" in personal injury cases. Kansas has not passed upon the "formula technique" used in arguing damages to a jury by counsel in personal injury cases. Other jurisdictions, particularly since 1958, have passed upon the question, some emphatically condemn the "formula technique," (*Botta v. Brunner*, [1958], 26 N. J. 82, 138 A. 2d 713, 60 A. L. R. 2d 1331; *Henne v. Balick*, [1958], 51 Del. 369, 146 A. 2d 394; *Appliance Company v. Harrington*, [1959], 201 Va. 109, 109 S. E. 2d 126; *Affett v. Milwaukee & S. T. Corp.*, [1960], 11 Wis. 2d 604, 106 N. W. 2d 274; and *King v. Railway Express Agency, Inc.*, [1961, N. D.], 107 N. W. 2d 509), and some, although holding it to be error, require that the prejudicial effect be shown, (*Faught v. Washam*, [1959, Mo.], 329 S. W. 2d 588; *Goldstein v. Fendelman*, [1960, Mo.], 336 S. W. 2d 661; *Missouri-Kansas-Texas Railroad Company v. Jones*, [1960, Okla.], 354 P. 2d 415; and see, *Braddock v. Seaboard Air Line Railroad Company*, [1955, Fla.], 80 So. 2d 662, 668), others give it

sanction, (*Caley v. Manicke,* [1961], 29 Ill. App. 2d 323, 173 N. E. 2d 209; *Yates v. Wenk,* [1961], 363 Mich. 311, 109 N. W. 2d 828; *Louisville & Nashville Railroad Co. v. Mattingly,* [1960, Ky.], 339 S. W. 2d 155; and *Samuel L. Bowers v. Pennsylvania Railroad Company, Appellant,* [1960], 281 F. 2d 953), and still others leave it to the discretion of the trial court (*Seaboard Air Line Railroad Co. v. Braddock,* [1957, Fla.], 96 So. 2d 127; *Ratner v. Arrington,* [1959, Fla.], 111 So. 2d 82; *Olsen v. Preferred Risk Mutual Insurance Company,* [1960], 11 Utah 2d 23, 354 P. 2d 575; *Jones v. Hogan,* [1960], 56 Wn. 2d 23, 351 P. 2d 153; and *Imperial Oil, Limited v. Drlik,* [1956], 234 F. 2d 4). The recent development of the law on this question is indicated by an annotation in 44 A. L. R. 2d 1205 [1954]. A later annotation appears in 60 A. L. R. 2d 1347 to 1353, inclusive, following citation of *Botta v. Brunner,* supra, 60 A. L. R. 2d 1331. An accumulation of the cases and legal literature on the subject may be found in *Ratner v. Arrington,* supra, and *Affett v. Milwaukee & S. T. Corp.,* supra.

The use of the "formula technique" to argue damages in a case before a jury by the display of a chart or blackboard is to be distinguished from the use of visual aids or demonstrative evidence in the trial of a case. The latter, if competent and accepted, are properly before the jury *as evidence.* (See, *Hamilton v. Harrison,* 126 Kan. 188, 193, 268 Pac. 119.)

While the precise question concerning the prejudicial effect of using a mathematical formula as a basis for determining damages for pain and suffering was not before the court in *Domann v. Pence,* 183 Kan. 135, 325 P. 2d 321, the subject was discussed in the following language:

". . . Pain and suffering have no known dimensions, mathematical or financial. There is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in dollars and cents. For this very practical reason the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation for the injuries suffered, and the law has entrusted the administration of this criterion to the impartial conscience and judgment of jurors, who may be expected to act reasonably, intelligently and in harmony with the evidence. . . ." (p. 141.)

The reasoning assigned by courts which disapprove the "formula technique" in arguing damages to a jury by making use of a chart or blackboard proceeds on the premise that there is no fixed basis, table, standard or mathematical rule which will serve as an accurate

index and guide to the establishment of damage awards for personal injuries. And it is equally plain there is no measure by which the amount of pain and suffering endured by a particular individual can be calculated. The varieties and degrees of pain are almost infinite. Individuals differ greatly in susceptibility to pain and in capacity to withstand it. And the impossibility of recognizing or of isolating fixed levels or plateaus of suffering must be conceded.

As a consequence, the law has declared the standard for measuring damages for personal injuries to be reasonable compensation and has entrusted the administration of this criterion to the impartial conscience and judgment of the jurors who may be expected to act reasonably, intelligently and in harmony with the evidence.

It is then said, use of the mathematical formula in argument to a jury by means of a blackboard demonstration of plaintiff's counsel permits the plaintiff to put in the record evidence which he would not otherwise have been permitted to introduce. If this were proper it would be equally logical to permit expert witnesses to testify before the jury as to the reasonableness of the figures submitted for suffering consequent upon the injury, a revolutionary innovation which not even the most ardent zealots of the mathematical formula technique have proposed.

Whatever may be the cold logic or academic theory of the matter, it is said, the ungilded reality and purpose is that such argument is calculated and designed to implant in the jurors' minds definite figures and amounts not theretofore in the record out of all proportion to those which the jury would otherwise have in mind, and to influence the jurors to adopt those figures and amounts with the view of securing a verdict much larger than that warranted by the evidence. Admonitions of the court that the jury should not consider per diem or mathematical formula arguments as evidence fail to erase all prejudicial effect.

It is further said that following such argument by the plaintiff, the defendants are prejudiced by being placed in a position of attempting to rebut an argument having no basis in the evidence, with the result that if they do not answer the plaintiff's argument in kind they suffer its effect on the jury, but if the defendants do answer in kind they thereby imply approval of the per diem or mathematical formula argument for damage determination.

The use of a mathematical formula is branded by such courts as pure speculation by counsel, which is not supported by the evidence and presents matters which do not appear in the record.

It should be noted, contrary to the Kansas law, some of the courts which condemn the "formula technique" do not permit reference to the *ad damnum* clause of the complaint either by the court in its instructions to the jury or by counsel in argument. (See, *Botta v. Brunner*, supra.)

Courts which sanction the mathematical formula argument to a jury in personal injury actions say that to deny the use of such argument would be a curtailment of the right of argument since it precludes the use of a persuasive technique. It is said jurors should necessarily be guided by some reasonable and practical considerations. The determination of damages for pain and suffering should not be relegated to a blind guess, and the jury should not be required to determine the matter in the abstract. Illustrative is the language in *Calay v. Manicke*, supra, as follows:

". . . Surely it is artificial restriction if we are to say to plaintiffs: 'You can argue the gross figure but that is all!' Such a dictate does not commend itself. Why not discuss the parts that make up the whole? We do not say that an advocate must or even should, but if in his judgment he deems such of greater persuasiveness, we can see no reason not to accord him that right. It is, after all, argument, not evidence. There is an approved cautionary instruction to that effect. Jurors certainly know, even absent this instruction, that counsel in the case are not witnesses nor parties. They expect an argument. They are entitled to it. No one is seriously going to argue at this late date that they view lawyers' arguments as evidence." (pp. 339, 340.)

Further reasons advanced by courts taking this position are: That the very absence of a yardstick makes the contention, that counsel's suggestions of amounts mislead the jury, a questionable one; that the evidence fails to provide a foundation for per diem or mathematical formula suggestion is an unconvincing argument because the jury must, by that or some other reasoning process, estimate and allow an amount appropriately tailored to the particular evidence in that case as to the pain and suffering or other such element of damages; that a suggestion by counsel that the evidence as to pain and suffering justifies allowance of a certain amount, in total or per diem figures, does no more than present one method of reasoning which the trier of the facts may employ to aid him in making a reasonable and sane estimate; that such per diem arguments are not evidence, and are used only as illustration and suggestion; that the

claimed danger of such suggestion being mistaken for evidence, if present, can be dispelled by the court's instructions; and that when counsel on one side has made such argument the opposing counsel is equally free to suggest his own amounts as inferred by him from the evidence relating to the condition for which the damages are sought. (See, *Ratner v. Arrington*, supra, where a summary of the reasons pro and con are enumerated.)

On the record presented by the instant appeal it is unnecessary to determine whether the trial court erred in permitting the display of the large chart from which damages were argued to the jury on the basis of a mathematical formula. This question we leave open. *Assuming* that it was error, the majority of the members of this court are of the opinion that the appellants were not prejudiced by the use of the chart or the arguments based thereon.

Here the appellee brought an action asking damages in the total sum of $35,000. In the trial of the case it was counsel's duty to present such evidence to a jury as would logically justify this amount. The life expectancy of the appellee was agreed upon by the parties. Two physicians testified that the appellee was permanently injured. One said he could expect to suffer pain and discomfort the rest of his life.

The court gave the usual instruction to the jury that they should listen to arguments of counsel, who would endeavor to aid them in arriving at a just verdict by reviewing and discussing the evidence and showing the application and effect thereof under the law as given them in the instructions, but regardless of what counsel said it was their sworn duty as triers of the case to be governed in their deliberations and final conclusions *by the evidence* as it had been produced before them and as they understood and remembered it, and by the law as given them in the instructions.

The court also instructed the jury that they were to "allow the plaintiff such amount as you believe *from the evidence* will be fair and just compensation to him for the reasonable value of past and future medical and hospital services, the value of his time lost to date, past and future physical pain and mental anguish, and loss of future earning capacity or permanent disability, but in no event can the amount of your verdict exceed the sum of $35,000.00, the amount prayed for by the plaintiff in his petition." (Emphasis added.)

True, the jury asked to see the chart after they entered the jury

room, but this was not permitted. The court had instructed the jury that they were free to take any exhibits with them to the jury room or to request them during deliberations. The act of the trial court in declining to let the jury see the chart after commencing its deliberations emphasized that the chart was not evidence.

The appellee sued for $35,000; the chart itemized damages in the total sum of $24,401; and the verdict was $15,000, which is less than half the amount sued for and a little over half the amount set out on the chart. The record discloses the jury deliberated approximately six hours. It can reasonably be assumed the jury devoted most of its time, if not all of it, to the question of damages, inasmuch as the liability of the appellants was hardly a controverted issue as viewed from the evidence.

Upon all the facts, conditions and circumstances presented by this record it may be said the verdict reflects careful consideration by the jury, rather than passion and prejudice, and the use of the chart and the argument based thereon cannot be said to have had prejudicial influence upon the jurors.

The judgment of the trial court is affirmed.

SCHROEDER, J., dissenting: In my opinion the verdict of $15,000 on the facts and circumstances presented by the record in this case indicates that the jurors were influenced by passion and prejudice. Whether the mention of insurance by the appellee on direct examination contributed to the prejudice would be rather difficult to say.

It could be argued that the Santa Fe Railway Company is a multimillion-dollar corporation, and whether it carried liability insurance would be immaterial, since it is just as desirable for a plaintiff before a jury to have the Santa Fe as a defendant as an insurance company. But this is *clearly improper* because it recognizes one rule of law for wealthy corporate defendants and another for other defendants whose ability to pay a substantial verdict might be questionable.

In my opinion the administration of justice would be improved by a more vigorous application of the rules of law this court has pronounced. This approach would penalize those who improperly permit the insurance of a defendant to creep into a case, and substantially reduce the frequency of the so-called "inadvertent" reference to insurance. At the same time it would protect parties represented by counsel who practice their profession honorably. It is

clearly the duty of counsel for claimants to admonish their clients and the witnesses they use in the trial of a case concerning any reference to the defendants' insurance, and the legal effect it might have during the trial of a case. (*Coffman v. Shearer*, 140 Kan. 176, 34 P. 2d 97; and *Cannon v. Brown*, 142 Kan. 700, 51 P. 2d 1007.)

In my opinion exceptional circumstances have not been shown to avoid the prejudicial effect of the testimony regarding the defendants' insurance. Here the trial court did not cure the defect by a peremptory order to strike out the testimony, and no further instruction was given by the trial court on the subject. The record does not disclose any action by counsel for the appellants *at the trial* which might bring the case within the rule of *Thompson v. Barnette*, 170 Kan. 384, 227 P. 2d 120.

Cases disapproving the "formula technique," in my opinion, present the most persuasive reasoning. The "formula technique" permits an attorney in arguing his case to a jury to suggest a stated figure in money per day, or per month, or other period, as a basis for determination of the amount of damages to be allowed for pain and suffering, or other such element of damages. This argument is usually made from a blackboard or chart, as here, which is displayed to the jury in the course of argument.

It is clearly apparent the jury seized upon the mathematical formula set forth on the chart in this case, as evidenced by their request to see the chart after they had commenced deliberations. This is one of the most important indications of its prejudicial influence upon the jurors.

Arguments made to the jury by counsel for the appellee upon display of the figures of $130 per year for pain and suffering and $30 per month for permanent disability were highly improper. Reference to what "the government pays their people on less disability than that" ($30 per mo.) and "You know of your own knowledge the workmen's compensation amounts that they draw" was wholly outside the issues in the case. This argument fixed these figures in the jurors' minds.

The argument thereafter proceeded to ask the jury to "consider it seriously and allow him what you in your heart would want to have for your husband or yourself if you were in Mr. Caylor's seat." This was most improper. The so-called "Golden Rule" may not be applied to such damages. (*Botta v. Brunner* [1958], 26 N. J. 82, 138 A. 2d 713, 60 A. L. R. 2d 1331; *Goodrich v. Cort*

[1910], 80 N. J. L. 653, 657, 77 At. 1049; *Stein v. Meyer* [D. C., E. D. Pa. 1957], 150 F. Supp. 365; *Gulf, C. & S. F. Ry. Co. v. Carson* [Tex. Civ. App., 1933], 63 S. W. 2d 1096; *Fambrough v. Wagley* [1943], 140 Tex. 577, 169 S. W. 2d 478; and *Jackson v. Southwestern Public Service Company* [1960], 66 N. M. 458, 349 P. 2d 1029.) The jurors must give objective consideration to the evidence presented, and not subjective consideration based upon their own desires for money as recompense for injury.

In *Faught v. Washam* [1959, Mo.], 329 S. W. 2d 588, the court was confronted by a similar argument and said:

". . . but this character of plea is consistently condemned and uniformly branded as improper, the rationale of rejection being that a juror 'doing that would be no fairer judge of the case than would plaintiff' himself [*F. W. Woolworth Co. v. Wilson*, 5 Cir., 74 F. 2d 439, 442, 98 A. L. R. 681] and that such 'argument, in effect, affirms as a correct principle that a man may properly sit in judgment on his own case—an idea abhorrent to all who love justice' and not 'given a cloak of respectability by associating it with the Golden Rule' because that Rule 'applies in favor of the defendant as well as the plaintiff.' *Red Top Cab Co. v. Capps*, Tex. Civ. App., 270 S. W. 2d 273, 275." (p. 602.)

Turning to the evidence in this case, the appellee testified that he told the police officer who investigated the accident at the scene that "as far as I knew I was the only one hurt and I thought I'd be all right." When asked if he wanted an ambulance the appellee didn't think it was necessary. While the appellee did receive some injury, he was off work only twenty-five days, and the record does not disclose that he lost a working day since.

Had the jurors been absolutely free of any prejudicial influence, a considerable amount of evidence presented by the record might have been viewed in a different light.

Commencing three months after the accident it would be fair to say the only evidence of pain and suffering or permanent disability had its origin in statements made by the appellee. Dr. Pusitz, called as a witness for the appellee, examined him approximately three months after the accident and found nothing wrong upon *physical examination*, except some limitation of motion in the neck. X-rays previously taken were examined and no injury was disclosed. Dr. Pusitz' diagnosis was based upon "subjective complaints of nervousness and of tenderness in the neck region" given by Caylor, who also "described a tenderness over the region of the lumbodorsal spine." Tests given by Dr. Pusitz to check these complaints *did not accentuate the pain*.

Dr. Roberts' vagueness and fleeting reference to the permanent disability of Caylor was no doubt prompted by his reliance upon subjective complaints of Caylor.

A physical examination given Caylor by Dr. D. B. Foster for the appellants almost ten months after the accident disclosed no deviations from normal. Additional X-rays were taken during this examination but disclosed nothing attributable to the accident. At that time Caylor was found to have an active stomach ulcer, an old impairment of the left eye and his left knee, all of which were unrelated to this accident.

Thus, the jury could readily have found from the evidence the appellee was malingering for the designed purpose of recovering damages for future pain and suffering and permanent disability.

Calculations will disclose the damages indicated by the chart for the last two items were compromised by the jury on a fifty-fifty basis, rounding out the verdict to the nearest thousand. Therefore, it would be logical to argue the jury compromised on the evidence, which indicated possible malingering for the purpose of recovery on the last two items of damage.

The appellants were entitled to a fair trial free of error which in all probability had a prejudicial influence upon the jury.

It is respectfully submitted the case should be reversed and a new trial granted.

FATZER, J., dissenting: The use by plaintiff's counsel of the "formula technique" was prejudicial error and allowed him to invade the province of the jury and get before it what did not appear in the evidence. An expert witness would not be permitted to testify as to the market value of pain and suffering or permanent disability, and certainly there is all the more reason for counsel not to do so. In *Henne v. Balick*, 51 Del. 369, 146 A. 2d 394, the supreme court of Delaware said:

"It has long been the rule in this State and elsewhere that the determination of the amount of plaintiff's damage for pain and suffering shall be determined by the trier of facts based upon the evidence submitted. This is so because any specific yardstick based upon the evidence presented is entirely lacking and courts generally do not favor the determination of damages based upon speculation or fancy. It is only in comparatively recent years that the use of a mathematical formula has been permitted in any of our courts for consideration by the jury in ascertaining the amount of plaintiff's damage. . . . There is no testimony in this case—and none would have been received if offered—in support of these figures.

". . . As we view this evidence, plaintiff was permitted by means of a blackboard demonstration of plaintiff's counsel to put in the record evidence which he would not otherwise have been permitted to introduce. It seems to us that if such evidence is to be permitted, it would be equally logical to permit expert witnesses to testify before the jury as to the reasonableness of the figures submitted for pain and suffering. No one would deny that to permit such a procedure would not only be fantastic but would be casting aside entirely the rules of procedure long followed in this country and England of permitting a jury to determine the amount to which a plaintiff would be entitled as damage for pain and suffering or other unliquidated damage based solely upon the evidence submitted.

". . . We are also clearly of the opinion that in many cases at least the purpose of such use is solely to introduce and keep before the jury figures out of all proportion to those which the jury would otherwise have had in mind, with the view of securing from the jury a verdict much larger than that warranted by the evidence." (l. c. 375, 376, 377.)

The point was considered by the supreme court of Missouri in *Faught v. Washam* (1959), 329 S. W. 2d 588, and in rejecting the "formula technique," it said:

". . . Only within the past few years have resourceful and ingenious counsel developed the 'trial technique' of appealing to the jury to follow a mathematical formula in admeasuring damages for pain and suffering. . . .

"To us, the considerations advanced by the authorities disapproving the mathematical formula argument are more persuasive. Whatever may be the cold logic or academic theory of the matter, the ungilded reality is that such argument is calculated and designed to implant in the jurors' minds definite figures and amounts not theretofore in the record (and which otherwise could not get into the record) and to influence the jurors to adopt those figures and amounts in evaluating pain and suffering and in admeasuring damages therefor. If an *argument* of this character is permissible and proper, it would be just as logical, and equally as fair, to permit 'expert witnesses' to evaluate pain and suffering on a per diem or per hour basis—a revolutionary innovation which, so far as we are advised, not even the most ardent zealots of the mathematical formula technique have (as yet) proposed. . . . The contention of its advocates that the mathematical formula argument is nothing more than that and is not evidence and that the fancied danger of its being mistaken for or accepted as evidence is greatly magnified and exaggerated by the timorous is a contention sound and plausible without but hollow and specious within. . . ." (pp. 602, 603, 604.)

See, also, *Domann v. Pence*, 183 Kan. 135, 141, 325 P. 2d 321.

I would reverse the judgment.

Parker, C. J. (dissenting): I agree in principle with the views expressed by Justices Fatzer and Schroeder in their respective dissents. Therefore I would reverse the judgment and grant a new trial.