No. 73,646

WADE WILSON, *Appellee*, v. AMY L. WILLIAMS,
*Appellant*.
933 P.2d 757

Opinion filed March 7, 1997.

*David M. Druten*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause, and *William P. Coates, Jr.*, and *Douglas M. Greenwald*, of the same firm, of Lenexa, were on the briefs for appellant/cross-appellee.

*Jerry K. Levy*, of Law Office of Jerry K. Levy, of Lawrence, argued the cause, and *Ronald L. Schneider*, of the same firm, was with him on the briefs for appellee/cross-appellant.

*L. J. Leatherman*, of Palmer & Lowry, of Topeka, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

*Scott C. Nehrbass*, of Shook, Hardy & Bacon, L.L.P., of Overland Park, was on the brief for *amicus curiae* Kansas Association of Defense Counsel.

The opinion of the court was delivered by

ABBOTT, J.: We accepted review of this appeal from a Court of Appeals decision holding that the plaintiff's attorney improperly utilized a formula or per diem argument to suggest pain and suffering damages in his closing argument. The plaintiff, Wade Wilson, contends his attorney did not utilize a prohibited technique; that if he did, it was not properly objected to at trial; and that if the technique was prohibited, then the prohibition against the technique should be reversed.

The trial court granted judgment to Wilson and against the defendant, Amy L. Williams, on the issue of liability, and the case was submitted to the jury on the issue of damages only.

The issues in this case arise out of Wilson's counsel's rebuttal closing argument.

Jerry Levy, Wilson's counsel, argued that the jury should award Wilson $25,000 for nonpecuniary damages, including pain, suffering, disability, disfigurement, and loss of enjoyment of life, and $100,000 for future nonpecuniary damages. He then attempted to convince the jury that these figures were not really as large as they seemed by making the following argument:

"MR. LEVY: We're going to be trying to answer some questions and give some reasons why I think certain numbers that I'm going to suggest to you as a verdict in this case are reasonable. . . . Wade Wilson, his life expectancy is 36 and a half years and if my figures are correct, that comes to around 13,323 days. I give you those figures only because when I discuss with you in a minute what I believe is a fair value for future losses, I am going to show you it is really, although the figure is large, per day it is not very much.

. . . .

". . . And so, for [Wilson's] pain and suffering, disability, disfigurement, loss of enjoyment of life $25,000.00. Same thing for loss of enjoyment of life and disability and so on in the future $100,000.00. And again, with his life expectancy, that comes out to around $8.00 a day or something like that, not a lot of money to compensate a man who is going to have lots of pain and swelling in his leg every day of his life; and who is going to have an ankle that is going to develop arthritis; and who is going to have an ankle that is going to wear out. Total $296,500.00, again, it is a big figure but when you consider the length of time we're talking about for which this man is going to have to suffer, the losses he has already incurred, the pain and suffering and disability he has already been through, I think these figures are fair."

Williams' counsel objected when Wilson's counsel listed the life expectancy of Wilson in days and years in order to show that the

amount of future pain and suffering damages requested was not very much per day. This objection was overruled by the trial court.

The jury returned an itemized verdict, awarding the precise amount of nonpecuniary damages to Wilson argued by his counsel in the rebuttal closing argument—$25,000 for pain, suffering, disability, and loss of enjoyment of life to date, and $100,000 for pain, suffering, disability, and loss of enjoyment of life in the future.

In an unpublished opinion, the Court of Appeals found that Wilson's attorney utilized a per diem or formula argument when requesting future pain and suffering damages for Wilson and that such argument was an error which presumptively caused prejudice to Williams. The Court of Appeals reversed the jury verdict judgment, remanding the case for a new trial as to the damages for Wilson without the use of a per diem closing argument.

The primary issue briefed before this court is whether the per diem or formula rule should be overruled. The Kansas Association of Defense Counsel and the Kansas Trial Lawyers Association submitted *amicus curiae* briefs on this issue.

The Court of Appeals was correct in stating that *Caylor v. Atchison, T. & S.F. Rly. Co.*, 190 Kan. 261, 374 P.2d 53 (1962) (*Caylor II*), prohibits the argument complained of. As this court has described it, a formula argument occurs when "time units of life [are] multiplied by [a] price of pain per unit." 190 Kan. at 264. A formula argument is made when the plaintiff requests a lump sum amount for future pain and suffering damages, and this lump sum is divided by the number of time units expected in a plaintiff's life to equal a price of pain per unit. Whether the argument is made forward or backward (lump sum divided by time units or time units multiplied by price per pain unit), it is still prohibited. See 3 A.L.R. 4th 940, 943, n.2. Thus, Wilson's attorney's comments constituted a prohibited formula argument.

The determination of whether the prohibition in Kansas against the per diem or formula rule should be overturned or modified is a question of law. When determining a question of law, this court may exercise an unlimited de novo standard of review. *Dickerson v. Kansas Dept. of Revenue*, 253 Kan. 843, 844, 863 P.2d 364 (1993); see *State v. Nelson*, 249 Kan. 689, 692, 822 P.2d 53 (1991).

One of the first cases in the country to analyze whether the formula technique should be allowed in opening or closing arguments was *Botta v. Brunner*, 26 N.J. 82, 138 A.2d 713 (1958). In *Botta*, the New Jersey Supreme Court prohibited the use of the formula technique, finding that the arguments invaded the province of the jury, were speculative, and were not supported by evidence. 26 N.J. at 100-03. In order to be consistent with this prohibition of the formula technique, the *Botta* court, unlike Kansas, forbade the mention or request of any amount of future pain and suffering damages by the plaintiff, even a request for a total lump sum amount of future pain and suffering damages. 26 N.J. at 104. This New Jersey rule, which prohibited the use of formula technique, became known across the country as the *Botta* rule. In 1962, this court had the opportunity to decide whether it would accept the *Botta* rule and prohibit the use of the formula technique in opening and closing arguments or whether it would allow such arguments. This opportunity arose in the case of *Caylor v. Atchison, T. & S.F. Rly. Co.*, 189 Kan. 210, 368 P.2d 281 (1962) (*Caylor I*), *rev'd in part on rehearing* 190 Kan. 261, 374 P.2d 53 (1962) (*Caylor II*).

In *Caylor*, the plaintiff was injured in an automobile accident when the back of his car was hit by a Santa Fe truck. The plaintiff suffered back, neck, and head injuries as a result of the accident. He sued Santa Fe and the truck driver to recover for these injuries. The plaintiff presented evidence at trial that he had experienced pain and suffering due to his injuries and would likely experience pain and suffering in the future. In closing argument, the plaintiff's counsel showed a large chart which indicated in pertinent part:

" 'VERNON CAYLOR
AGE 29

| | |
|---|---|
| LIFE EXPECTANCY | 38.6 yrs. |
| .... | |
| FUTURE PAIN AND SUFFERING | ($ 5,000.00) |
| (Approx. $130.00 per year) | |
| PERMANENT DISABILITY | $14,040.40 |
| ($30.00 per mo. for 39 yrs.) | |

TOTAL DAMAGE                                    $24,401.00' "

189 Kan. at 216.

The plaintiff's counsel made the following comments in reference to the chart during his closing argument:

" 'Pain and suffering is worth something. You can't see it. That is up to you folks. I suggest $3,500 up to date. He's going to have it in the future. I suggest $5,000 for that. That is $130 per year for the rest of his life.

" 'Now as to his permanent disability, I suggest to you folks, and this is my suggestion only, with a life expectancy of 38 years, $30 a month, total fourteen thousand some-odd dollars. It comes out to this figure of $24,000. I suggest these figures at $30 per month because the government pays their people on less disability than that. You know of your own knowledge the workmen's compensation amounts that they draw. . . . There is nobody else to blame but them and he cannot come back, so we submit that when you consider this, consider it seriously and allow him what you in your heart would want to have for your husband or yourself if you were in Mr. Caylor's seat.' " 189 Kan. at 216.

Once deliberations began, the jury asked to see the chart, but the trial court refused this request. The jury came back with a verdict for the plaintiff in the amount of $15,000 in damages. The defendant appealed. The defendant did not contest liability. Instead, the defendant challenged the amount of damages awarded. According to the defendant, the jury was prejudiced by the formula in the chart regarding future pain and suffering damages. The defendant argued that the jury improperly considered the chart and its mathematical formula as evidence, as indicated by the fact that the jury requested to see the chart during deliberations. Further, the defendant claimed that the judge erred by not specifically instructing the jury that the chart and its mathematical formula were not to be considered evidence.

In ruling on the issue in *Caylor I*, this court first commented on the increasing use of mathematical formulas and charts by plaintiffs' counsel when arguing for future pain and suffering damages. The court cited to numerous cases across the country which had addressed the formula technique. As the *Caylor I* court pointed out, courts across the country were and are split on whether to allow such arguments. A majority of jurisdictions allow such arguments.

Assuming that the chart was improper, this court found that the jury was not prejudiced by the chart because the jury was instructed to award damages based only upon the evidence presented and not upon counsel's arguments. The plaintiff's medical experts testified that the plaintiff would experience pain and suffering for the rest of his life, and the plaintiff's life expectancy was agreed on by the parties. The trial court told the jury that it could view any exhibits entered into evidence during deliberations. However, when the jury asked to see the formula chart during deliberations, the trial court refused the request because the chart had not been admitted into evidence. The *Caylor I* court found that the jury carefully deliberated the damage issue based only upon the evidence presented, as it was instructed to do, and not upon the chart. Further, the jury awarded the plaintiff $15,000, less than one-half of his requested damages. Based on the award, this court held that the use of the chart and the accompanying formula technique, even assuming it was in error, was not prejudicial and did not require a new trial.

The court in *Caylor I* split 4 to 3. A motion for rehearing was granted, and upon rehearing, the trial court and *Caylor I* were reversed on a 4 to 3 vote in *Caylor II*.

In *Caylor II*, the majority conceded it was adopting the minority view. It held that in closing argument the use of a mathematical formula for pain and suffering is reversible error and that "prejudice is conclusively presumed as a matter of law and a new trial must be granted." 190 Kan. at 268.

In the *Caylor II* dissent, Justice Wertz pointed out that of the 32 states considering the issue, only 7 prohibited the argument at that time. Two of those jurisdictions (Pennsylvania and New Jersey) prohibited the court and parties from mentioning *any* amount, total or per diem, deserved or expected for unliquidated damages. Unlike these states, Kansas permits a total sum to be argued.

Little would be gained by rehashing the arguments set forth in *Caylor I* and *Caylor II*. Later opinions set forth in 3 A.L.R.4th 940 shed no new or different light on the issue.

Since *Caylor II*, this court has addressed the formula technique on two other occasions—*Timmerman v. Schroeder*, 203 Kan. 397,

454 P.2d 522 (1969), and *Huxol v. Nickell,* 205 Kan. 718, 473 P.2d 90 (1970). These cases deal more with the definition of a formula argument, not with whether the prohibition of formula arguments should be abolished or modified. Thus, these cases also shed little light on the issue at hand.

We find Justice Wertz' dissent in *Caylor II* to be persuasive. This state permits argument as to life expectancy, which is just as speculative as a suggested per diem amount for unliquidated pain and suffering damages. This state also allows argument as to the total amount desired for unliquidated damages such as pain and suffering. The jury is instructed that counsel's argument is not evidence. PIK Civ. 2d 2.04. Only evidence is allowed into the jury room during deliberations. Thus, the trial court should not permit formula charts, which can be used in oral argument but not admitted into evidence, to be taken into the jury room. To suggest to a jury a sum per unit of pain is not inconsistent with analogous arguments. It is not testimony, it is simply argument, and would be accepted by a juror as just that, *i.e.,* an argument—the advocate's suggestion to the jurors as to how they might arrive at a certain sum for damages.

If a party could show a jury had arrived at a sum for pain and suffering by placing a value on a unit of pain, we would not grant a new trial. Why, then, should we hold it error for an attorney, whom the jury knows is an advocate, to suggest the jury consider arriving at a lump sum by assigning a sum it considers reasonable to a unit of pain, whether that unit be an hour, a day, a week, a month, or a year, and multiply that sum by the number of units of pain the plaintiff is expected to suffer?

In arguing for the allowance of the formula technique, Justice Wertz stated in his *Caylor II* dissent:

"I consider it a fair argument and rational approach to treat damages for pain in the way it is endured—month by month—year by year.

"The concept of totality pronounced by the majority opinion has no counterpart in the world of human affairs. Society recognizes 'the day' as a basic unit of humanity. We rise in the morning and go to bed at night, and our institutions function accordingly. No judge's salary is computed or paid in a lifetime lump and there are no lifetime meals, no lifetime drinks, no lifetime haircuts, nor anything else; nor has any living human being ever lived a lifetime of pain in the whole. Pain is

lived by the hour and the day and is ticked off by the same clock that sends one to work in the morning and home at night.

"Although the jurors will eat their daily meals and live their daily lives, they must now think of pain and suffering as a lifetime lump. Such a coerced concept will have no more meaning than lifetime rent, lifetime shoes, or lifetime meals. This court's logic would now force jurors to value steak by the herd, cars by the fleet, and pain by the life. Forcing jurors to think in a language they never heard of cannot be designed or expected to produce just results.

"There is absolutely no justification for a rule which singles out one type of damage in one type of case and says that it alone is not the proper subject of adversary argument. Logic declares that stifling of discussion and analysis will not lead to intelligent verdicts. It is to be doubted whether a proper verdict can be expected to break through an atmosphere of judicially imposed ignorance; and equal justice to all will not be obtained by muzzling the advocates. This rule cannot help but lead us and the trial courts into either totally inconsistent decisions or into the most unjust results." 190 Kan. at 277.

That part of *Caylor II* which prohibits mathematical formula comments and charts during oral arguments is overruled. However, this opinion does not authorize expert testimony on the subject, and the trial court should continue to give PIK Civ. 2d 9.01 (1995 Supp.), which instructs a jury that there is no mathematical formula to determine nonpecuniary damages. Further, the trial court should instruct the jury that counsels' opening and closing arguments are not evidence.

The judgment of the Court of Appeals is reversed, insofar as it followed *Caylor II*, and the judgment of the district court is affirmed.